NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0255-15T3

ALLIANCE SHIPPERS, INC.,

 Plaintiff-Appellant/
 Cross-Respondent,

v.

CASA DE CAMPO, INC.; PEDRO PEREZ,
individually and as an agent of CASA
DE CAMPO, INC.; ARTHUR DE PINTO;
FELIX PRODUCE CORP.; FELIX CEBALLO,
individually and as an agent of FELIX
PRODUCE CORP.; GFP DISTRIBUTORS, INC.
t/a GARDEN FRESH PRODUCE; JOSEPH T.
GUARRACINO, individually and as an
agent of GFP DISTRIBUTORS, INC. t/a
GARDEN FRESH PRODUCE; JOSEPH KOLINEK,
individually and t/a C&M PRODUCE;
LIONXEN CORP. AND PRODUCE BIZ LLC
t/a POSEIDON FOOD SERVICE; XENOFON
GIALIAS, individually and as agent
of LIONXEN CORP. AND PRODUCE BIZ LLC
t/a POSEIDON FOOD SERVICE; VILLAGE
PRODUCE, INC.; MOHAMMED HADI,
individually and as agent of VILLAGE
PRODUCE, INC.; ALEX PRODUCE CORP.;
ALEX BONILLA a/k/a ALEJANDRO BONILLA,
individually and as an agent of ALEX
PRODUCE CORP.; HEE JAE PARK d/b/a
J&S PRODUCE COMPANY; LUIS JOSE BONILLA
d/b/a LUIS JOSE PRODUCE; ZEF DELJEVIC;
HENRY GARLAND, individually and t/a
PRO QUALITY PRODUCE and BALMANGAN
PRODUCE, INC.; GEORGE V. ROUSSOS;
SANANJOS PRODUCE CORP. d/b/a FRIEMAN
BROS.; KOREAN PRODUCE CORP.; PAUL KIM
a/k/a PIL JUNG KIM and STELLA KOUFALIS,
individually and t/a KMS FRUIT &
VEGETABLES; and HAVANA PRODUCE, INC.,

 Defendants,

and

ERNESTO REGUITTI, individually
and as an agent of SANANJOS
PRODUCE CORP. d/b/a FRIEMAN BROS.,

 Defendant-Respondent/
 Cross-Appellant.
_______________________________

 Argued December 1, 2016 - Decided April 24, 2017

 Before Judges Lihotz and Hoffman.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Docket No. L-
 2650-13.

 Ronald Horowitz argued the cause for
 appellant/cross-respondent.

 Mark C. H. Mandell argued the cause for
 respondent/cross-appellant.

PER CURIAM

 This mundane collection action involving extremely litigious

parties has blossomed into a procedurally complex matter, which

includes removal and remand to federal court, disjointed review

by two Law Division judges, and ended with an order for sanctions.

Not surprisingly, the parties filed cross-appeals from that order.

 2 A-0255-15T3
 Plaintiff, Alliance Shippers, Inc. (Alliance) appeals from

two Law Division orders: a May 29, 2015 order imposing sanctions

and an August 21, 2015 order denying reconsideration of that order.

Defendant Ernesto Reguitti filed a cross-appeal challenging the

same orders, arguing the attorney's fees awarded were

insufficient. We reverse both orders and remand the matter for

further proceedings as discussed in this opinion.

 Alliance initiated a collection action against Kris-Pak Sales

Corp. (Kris-Pak), for outstanding freight transportation services

(Docket No. MID-L-2024-12). Judgment was entered against Kris-

Pak (Judgment No. J-155860-12) and Alliance commenced discovery

in aid of execution. Alliance learned various entities owed

receivables to Kris-Pak. Alliance sought to collect those sums

to satisfy its judgment.

 Kris-Pak's debtors include Sananjos Produce Corp. d/b/a

Frieman Bros. (Sananjos) and its principal, Ernesto Reguitti,

individually. This debt for purchased produce was governed by the

Perishable Agricultural Commodities Act (the Act), 7 U.S.C.A. §

499(c)(5). The Act includes provisions imposing personal

liability on the principals who fail to satisfy corporate debts.

Although Sananjos was formally dissolved, a portion of its debt

due Kris-Pak was assessed personally against Reguitti, as

Sananjos' principal.

 3 A-0255-15T3
 A February 24, 2010 consent judgment entered by the United

States District Court for the District of New Jersey (USDC

judgment) memorialized Reguitti's obligation. Under the terms of

the USDC judgment, Reguitti made monthly payments to an escrow

agent, who would allocate the monies received among the respective

creditors entitled to payment. Included among those debtors was

Kris-Pak, which was owed $77,172.50, but only entitled to receive

$54,020.75 under the USDC judgment. Additionally, the USDC

judgment provided: "The [j]udgment [h]older[] shall refrain and

forbear for [sic] any enforcement of their rights under the consent

judgment."

 In the Law Division, Alliance moved for an order requiring

the escrow agent to turnover monies due Kris-Pak. The motion

served on Sananjos and Kris-Pak was unopposed. The July 26, 2013

order, entered under Docket No. MID-L-2024-12, provided the debt

of $77,172.50 due by Sananjos to Kris-Pak shall be paid to

Alliance, not Kris-Pak. Further, Sananjos and Kris-Pak were

enjoined from compromising the debt and Kris-Pak's rights to

payment were transferred to Alliance, which could execute and

liquidate same.

 When he received the turnover order, counsel for Reguitti

took the position Sananjos was dissolved, and because Sananjos had

not made payments to the escrow agent, the order did not bind his

 4 A-0255-15T3
client. He also contended Alliance's judgment against Kris-Pak

was defective.

 Alliance filed a new complaint under Docket No. MID-L-2650-

13, naming as defendants the entities it believed were indebted

to Kris-Pak, which included Reguitti. Alliance explained "[t]he

action [sought] to reduce the obligations . . . into judgments

against the [Kris-Pak] account debtors and their principles."

 Reguitti's counsel issued correspondence dated December 2,

2013. He reiterated Alliance should contact the escrow agent and

not sue Reguitti, advising:

 [T]his letter shall serve to notify you that
 your Superior Court action against my client
 constitutes a direct violation of the
 settlement and the District Court order above
 noted. Demand, therefore, is herewith made
 upon you to discontinue said action against
 my client, with prejudice, not later than
 December 9[,] and to forward a filed-stamped
 copy of such discontinuance for receipt in
 this office not later than December 11, 2013.
 If you fail or refuse to do so, an appropriate
 application will be made to the District Court
 and my fees and costs to do so will be deducted
 from any amount [that] may remain due to Kris-
 Pak under the settlement.

 "Please guide yourself accordingly."

 Alliance had not received payment. Counsel wrote to the

escrow agent demanding the release of payments made toward Kris-

Pak's debt, as required by the July 26, 2013 turnover order. The

letter suggested failure to do so could trigger contempt

 5 A-0255-15T3
proceedings. Counsel for Reguitti, who received a copy of the

letter, responded again warning Alliance's "litigation style"

violated the USDC judgment. He informed Alliance Reguitti would

continue making monthly payments to the escrow agent to discharge

his personal liability, and would not do otherwise unless directed

by "a new" District Court order. Kris-Pak's counsel, who was also

copied with the pleadings and correspondence, wrote to the escrow

agent asserting an attorney charging lien against the funds.

Because of the disputes, the escrow agent declined to remit funds

to Alliance.

 Next, Reguitti issued a petition to remove the Law Division

action to the District Court, maintaining the original obligation

arose pursuant to the Act. In the District Court, Reguitti filed

an answer and counterclaim alleging Alliance, standing in the

shoes of Kris-Pak, breached the terms of forbearance stated in the

USDC judgment when it initiated litigation seeking to recover more

than the amount stipulated, sought to accelerate payments, and

acted to harass Reguitti, forcing him to incur unnecessary counsel

fees. Reguitti additionally filed a motion to stay Alliance's

action against Reguitti and sought to deposit all funds with the

court to determine the various claims against the funds. Alliance

opposed the motion and requested remand. The federal judge

reviewed the application and concluded Reguitti's removal was

 6 A-0255-15T3
improper and the motion was denied. She ordered the matter

remanded to the Law Division.

 A second turnover motion was filed by Alliance and granted

over Reguitti's opposition. The February 14, 2014 order (Docket

No. MID-L-2024-12) required the escrow agent turn over all monies

paid by Reguitti to Alliance. Reguitti was enjoined from

compromising the agreed settlement amount in the USDC judgment or

from paying the sums to others. Immediately thereafter, Alliance

requested entry of default against Sananjos, under Docket No. MID-

L-2650-13.

 Counsel for Reguitti sent a letter to Alliance and the escrow

agent tendering the balance of the amount due under the USDC

judgment. The transmittal letter stated payment was conditioned

on "full and final [s]atisfaction of the [c]onsent [j]udgment," a

"general release" from Alliance, and stipulation of dismissal of

the Law Division action, including Reguitti's previously filed

counterclaim. Reguitti's payment by the escrow agent was delayed

stating Alliance failed to respond to the "time sensitive" letter.

Alliance accepted the escrow agent's May 2014 warrant to satisfy

the obligation, but declined Reguitti's demand for a general

release. Alliance requested the Law Division enter default against

Reguitti.

 7 A-0255-15T3
 On July 2, 2014, Reguitti moved for default on his previously

filed counterclaim. Alliance responded, asserting Reguitti's

action was frivolous, and requested Reguitti withdraw his

application within twenty-eight days because no Law Division

responsive pleadings were served upon Alliance, and no factual or

legal basis existed for relief. This engendered additional motion

practice.

 Alliance moved to dismiss its action as to Reguitti and to

dismiss Reguitti's counterclaim. Alliance explained Reguitti

filed no pleadings in the Law Division, and it never received the

District Court pleadings, which likely were electronically filed.

Further, Alliance maintained Reguitti's recent request for default

was moot, as a stipulation to dismiss with prejudice was circulated

as to all claims between Alliance and Reguitti regarding the Kris-

Pak debt. However, Reguitti cross-moved for a judgment on its

counterclaim.

 The motion judge issued an order on September 8, 2014. The

order dismissed Alliance's complaint against Sananjos and denied

Alliance's request for sanctions. Further, the order denied

Alliance's request to dismiss the counterclaim, because default

was entered. Apparently, judgment on the counterclaim was also

denied. The record contains no statement of reasons.

 8 A-0255-15T3
 Civil case management assigned a September 22, 2014 trial

date. Alliance wrote to the Clerk's office explaining default

judgments were entered against all but one recently named defendant

(not Reguitti), and default against that defendant was pending.

Alliance closed its letter stating "this case should be removed

from the trial list."

 On September 22, 2014, a different judge (the trial judge)

considered the matter. On that date, Reguitti appeared, Alliance

did not. The record on appeal does not contain a transcript of

this proceeding, and the recited facts are gleaned from the court's

decisions and counsel's pleadings.

 The judge called Alliance's counsel, who was in Florida; he

did not answer. Counsel later returned the call, which the trial

judge declined to accept because Reguitti's counsel had left the

courthouse.

 During the hearing, Reguitti's counsel moved for entry of a

default judgment against Alliance on its counterclaim. He sought

an award of sanctions amounting to attorney's fees and costs

expended as a result of Alliance's violation of the USDC judgment.

The trial judge allowed Reguitti to submit proof of the amount

due.

 Alliance moved to vacate default on October 22, 2014, stating

default was improvidently granted and restated its position.

 9 A-0255-15T3
Believing Alliance did not file opposition to the requested amount

of sanctions, the trial judge entered final judgment, ordering

Alliance to pay $21,750. That same day, Alliance filed a letter

memorandum explaining it was unaware a trial was held, as it relied

on its prior correspondence explaining trial was unnecessary.

 The motion judge was assigned to review Alliance's

application to vacate default and dismiss the counterclaim. The

October 10, 2014 order denied the request as moot because a default

judgment was entered. Alliance then moved to vacate the default

judgment. Reguitti opposed the motion. The matter returned to

the trial judge, who issued an order and written opinion on

December 2, 2014. The order vacated default and default judgment

and scheduled an evidentiary hearing, on a date agreed to by

counsel.

 Subsequent correspondence and orders reflect the trial

judge's intention was to limit Alliance's challenge to the amount

of fees paid as sanctions. Alliance objected insisting once the

court vacated default judgment and default, the right to challenge

the validity of the underlying counterclaim remained. Alliance

urged there was no basis to award relief on the counterclaim

because there was no violation of the USDC judgment. This

disagreement prompted Alliance to again move to dismiss Reguitti's

counterclaim and request sanctions for advancing frivolous

 10 A-0255-15T3
litigation. On March 20, 2015, the motion judge granted the motion

to dismiss the counterclaim, as unopposed, but denied Alliance's

request for frivolous suit sanctions.

 The trial judge scheduled the previously ordered evidentiary

hearing for April 22, 2015. However, because of his schedule, he

modified the proceeding to allow oral argument on April 24, 2015,

and reserved decision.

 In a May 29, 2015 opinion, the trial judge stated "this court

conferred with [the motion judge] about this matter. Clearly her

order of March 20, 2015, was entered in error. Accordingly, she

has signed an order dated May 6, 2015, vacating it." The trial

judge's opinion addressed the pending issue, which he defined as

limited to the amount of sanctions. The trial judge again noted

Alliance's failure to appear for the scheduled trial date or

immediately move to open the default judgment. He stated the

order allowed Alliance to challenge the quantum of damages.

Instead of "addressing the merits of the counterclaim

calculations," Alliance's counsel chose to again move to vacate

the counterclaim. The trial judge found the motion represented

an impermissible attack on a prior court order, as two prior

requests to dismiss the counterclaim were denied. Reguitti's

request for additional attorney's fees incurred since the

 11 A-0255-15T3
September 22, 2014 trial was denied. Alliance's subsequently

filed motion for reconsideration was also denied.

 We begin by addressing Alliance's appeal from the May 29,

2015 order imposing sanctions and the August 21, 2015 order denying

reconsideration. Alliance argues the final settlement of the

matter precludes Reguitti from thereafter raising a counterclaim.

Alliance maintains it was required to file this complaint to secure

funds Reguitti owed to Kris-Pak because Reguitti objected to the

initial turnover order sent to the escrow agent. Also, Alliance

asserts it never sought to collect more than Kris-Pak was entitled

to receive and insists the matter was settled, resolving all

claims; however, Reguitti's resistance and insistence Alliance

issue a "New York form" of general release rather than a

stipulation of dismissal caused additional motion practice.

Alliance notes Reguitti improperly moved for removal, which was

denied as was its motion to dismiss its action, and never filed

responsive pleadings or an appearance in the Law Division, urging

the trial judge incorrectly assumed the federal pleadings were

transferred to the Law Division. Finally, Alliance urges reversal

because the trial judge erroneously concluded Alliance violated

the USDC judgment, a position presented and denied by the District

Court judge.

 The nature of this court's review is clear.

 12 A-0255-15T3
 In considering the legal and substantive
 issues raised on appeal, we stress at the
 outset our limited scope of review of the
 trial court's findings of fact . . . . It is
 well-settled that the factual findings of a
 trial judge sitting without a jury are
 "considered binding on appeal when supported
 by adequate, substantial and credible
 evidence."

 [539 Absecon Blvd., L.L.C. v. Shan Enter. Ltd.
 P'ship, 406 N.J. Super. 242, 272 (App. Div.)
 (quoting Rova Farms Resort, Inc. v. Inv'rs
 Ins. Co., 65 N.J. 474, 483-84 (1974)), certif.
 denied, 199 N.J. 541 (2009).]

This same deference is not afforded "[a] trial court's

interpretation of the law and the legal consequences that flow

from established facts," which we review de novo. Manalapan

Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

 We reject Alliance's first argument stating settlement of the

underlying obligation due Kris-Pak mooted Reguitti's counterclaim.

R. 2:11-3(e)(1)(E). We also decline to examine substantive claims

regarding each party's conduct during the litigation.

 Briefly, we address whether the counterclaim filed in the

District Court automatically becomes part of the Law Division

record, despite the lack of a formal action to do so. We find no

specific record reference demonstrating the court considered this

issue.

 The District Court may require the party petitioning for

removal to file copies of the state court record with the clerk

 13 A-0255-15T3
of the federal court, pursuant to 28 U.S.C.A. § 1447(b); however,

neither federal nor state law specifically addresses the procedure

following remand. Indeed, 28 U.S.C.A. § 1447(c) provides:

 If at any time before final judgment it
 appears that the case was removed
 improvidently and without jurisdiction, the
 district court shall remand the case, and may
 order the payment of just costs. A certified
 copy of the order of remand shall be mailed
 by its clerk to the clerk of the State court.
 The State court may thereupon proceed with
 such case.

 The effect given pleadings filed in the federal court remains

a matter of state policy, which is not subject to federal

determination. Edward Hansen, Inc. v. Kearny Post Office Assocs.,

166 N.J. Super. 161, 165 (Ch. Div. 1979); see also Ayres v.

Wiswall, 112 U.S. 187, 190-91, 5 S. Ct. 90, 92, 28 L.Ed. 693, 695

(1884) ("It will be for the State court, when the case gets back

there, to determine what shall be done with the pleadings filed

and testimony taken during the pendency of the suit in the other

[federal] jurisdiction.").

 Our sister states have not uniformly adopted a policy on the

effect of federal pleadings once a matter is remanded. For

example, some state a strict position not to accept pleadings

filed in federal court. See Steve Standridge Ins. v. Langston,

900 S.W. 2d 955, 958 (Ark. 1995) (reinforcing policy that whatever

happens in a federal court has no bearing on the proceedings in

 14 A-0255-15T3
state court once the case has been remanded after an unsuccessful

removal attempt); Tract Loan & Trust Co. v. Mutual Life Ins. Co.,

7 P. 2d 280, 292 (Utah 1932) (concluding an answer filed in federal

court was "without effect" after a remand); Citizens' Light, Power

& Telephone Co. v. Usnik, 194 P. 862, 863-64 (N.M. 1921) (holding

filing of a petition for removal of a cause from the state to the

federal court . . . does not extend the time to appear and plead

therein). Many of these cases are aged.

 States addressing the issue more recently have chosen to give

effect to all federal pleadings filed before remand. See Laguna

Vill. v. Laborers' Int'l Union of N. Am., 672 P. 2d 882, 885-86

(Cal. 1983) (holding a timely answer filed in District Court

following timely removal of the action is sufficient to prevent a

default in a state court if the case is subsequently remanded);

Williams v. St. Joe Minerals Corp., 639 S.W.2d 192, 194-95 (Mo.

App. 1982) (amended complaint filed in federal court properly

permitted in state court on remand, absent refiling); Armentor v.

General Motors Corp., 399 So.2d 811, 812 (La. App. 1981) (answer

filed in federal court treated as if filed in state court); Shelton

v. Bowman Transp., Inc., 230 S.E.2d 762, 764 (Ga. App. 1976)

(affirming vacation of state court default of defendant who filed

an answer in federal court before remand); Citizens Nat. Bk.,

 15 A-0255-15T3
Grant Cty. v. First Nat. Bk., Marion, 331 N.E.2d 471, 476-77 (Ind.

App. 1975) (same).

 New Jersey's jurisprudence addressing the subject is

surprisingly limited. Other than the Chancery Division's

discussion in Edward Hansen, supra, 166 N.J. Super. at 165, we

locate no other New Jersey case directly addressing this issue

and, frankly, none is identified by the parties on appeal.

 Alliance notes Rule 4:24-1(d) now requires the Law Division

to conduct a case management conference, within thirty days of the

remand from federal court. Certainly, application of this process

could have obviated what appears to be motion practice driven by

entrenched divergent positions. However, the rule's effective

operational date was January 1, 2015, which postdated the February

18, 2014 remand.

 Because we perceive more clarity may be necessary, we refer

the issue to the Supreme Court's standing Committee on Civil

Practice, requesting it consider whether Rule 4:24-1 should

specifically address the post-remand review and adoption of filed

federal court pleadings.

 No specific motion requested the Law Division accept or reject

the District Court pleadings. Although Alliance asserted the

District Court considered and denied Reguitti's motion to enforce

the USDC judgment and award it damages, perhaps the issue of the

 16 A-0255-15T3
status of the federal filings was not well articulated, and

unfortunately, the effect of the federal filings in the Law

Division was never squarely addressed. Instead, the trial judge

accepted the pleadings because Alliance was aware an answer was

filed. In doing so, we note the trial judge did not consider

whether the District Court's order denying Reguitti's motion for

relief, touched on the counterclaim's asserted violation of the

USDC judgment. These procedural lapses do not determine the result

we now order, but certainly they fueled the parties' fire for

continued disagreement.

 Our conclusion to reverse the May 29, 2015 order and denial

of reconsideration is more fundamentally based. We reverse the

orders because they are insufficiently supported and legally

incorrect.

 The judge noted Alliance's prior motions to dismiss

Reguitti's counterclaim were denied, and he concludes, without

review, Reguitti was granted relief because Alliance purportedly

violated an order entered by the District Court. The trial judge

labeled the award as one for sanctions for what Reguitti

characterized as "the 'scorched earth' conduct of Alliance and its

counsel during February 2014." On appeal, Reguitti maintains the

award was not one for frivolous litigation sanction under Rule

1:4-8 or N.J.S.A. 2A:15-59.1(a)(1), but merely compensation for

 17 A-0255-15T3
the breach of the USDC judgment. The terms of judgment did not

specifically contain provisions for an award of compensatory

damages and we reject Reguitti's attempt to parse the facts, noting

the trial judge made no findings to suggest the award represented

attorney's fees under Rule 4:42-9.

 Here, the judge ordered sanctions, but failed to review the

merits of the substantive claims advanced by either party or to

determine if sanctions were appropriate under the statute or the

rule. Accordingly, the unsupported order represents an abuse of

discretion, which must be reversed. Tagayun v. AmeriChoice of

N.J., Inc., 446 N.J. Super. 570, 577 (App. Div. 2016).

 Rule 1:4-8(a) provides:

 By signing, filing or advocating a pleading,
 . . . an attorney or pro se party certifies
 that to the best of his or her knowledge,
 information, and belief, formed after an
 inquiry reasonable under the circumstances:

 (1) the paper is not being presented
 for any improper purpose, such as to
 harass or to cause unnecessary delay
 or needless increase in the cost of
 litigation;

 (2) the claims, defenses, and other
 legal contentions therein are
 warranted by existing law or by a
 non-frivolous argument for the
 extension, modification, or
 reversal of existing law or the
 establishment of new law[.]

 18 A-0255-15T3
 Prior to issuing an award of sanctions under the rule,

subsection (c) requires the court issue "an order describing the

specific conduct that appears to violate this rule and directing

the attorney or pro se party to show cause why he or she has not

violated the rule." R. 1:4-8(c).

 As we noted, the trial judge did not identify what conduct

violated the rule, nor did he consider Alliance's position

expressing its pursuit of direct relief against Reguitti resulted

because of Reguitti's refusal to acknowledge the validity of the

turnover order as well as Reguitti's challenge to the escrow

agent's release of funds to Alliance. Frankly, we find several

instances where positions articulated by each side fail to advance

reasonableness or respect. That said, we cannot determine, and

the trial judge did not articulate, specific findings establishing

Alliance filed its complaint simply to harass Reguitti.

 We also note, the trial judge imposed sanctions against

Alliance, not counsel, without mention of the requisites mandated

by N.J.S.A. 2A:15-59.1(a)(1). "An award of fees against a party,

as opposed to a lawyer or a self-represented litigant, engaging

in frivolous litigation is governed by N.J.S.A. 2A:15-59.1(a)(1),

which requires a judge to determine whether a pleading filed by a

non-prevailing party was frivolous." Tagayun, supra, 446 N.J.

Super. at 578.

 19 A-0255-15T3
 In order to award fees under the statute, the
 court must find that a claim or defense was
 either pursued "in bad faith, solely for the
 purpose of harassment, delay or malicious
 injury" or that the non-prevailing party knew
 or should have known it "was without any
 reasonable basis in law or equity and could
 not be supported by a good faith argument for
 an extension, modification or reversal of
 existing law."

 [Ibid. (quoting N.J.S.A. 2A:15-59.1(b)(1),
 (2)).]

 Moreover, we determine the trial judge mistakenly suggested

Alliance unnecessarily refiled its motion to dismiss Reguitti's

counterclaim as a basis for relief. The judge also mentioned his

particular displeasure with Alliance for "proceed[ing] before two

judges simultaneously without making each aware of the other.

[Alliance’s] motions to dismiss the counterclaim raised before me

did not note that [the motion judge] . . . denied a similar motion

earlier." This apparently rejected Alliance's position that the

order vacating default judgment and default allowed a substantive

attack on the merits of Reguitti's counterclaim.

 We remain puzzled by these comments. Alliance's first motion

to dismiss the counterclaim was denied because default was entered,

a fact of which Alliance was not aware. The second motion,

although filed first, was denied because the trial judge entered

default judgment. The third motion granted relief after Reguitti

did not file opposition. However, the motion judge vacated her

 20 A-0255-15T3
order on May 6, 2015, without notice to the parties, or a statement

of reasons for doing so.

 We reject the imposition of sanctions purportedly based on

the suggestion Alliance improperly moved to dismiss Reguitti's

counterclaim once default and default judgment were vacated. A

review of the procedural history reveals neither the motion nor

the trial judge considered the merits of this request.

 Sanctions for frivolous litigation are
 not imposed because a party is wrong about the
 law and loses his or her case. The nature of
 conduct warranting sanction under Rule 1:4-8
 and under the statute has been strictly
 construed. The term frivolous should not be
 employed broadly or it could limit access to
 the court system. First Atl. Fed. Credit
 Union v. Perez, 391 N.J. Super. 419, 432-33
 (2007). Imposing sanctions is not appropriate
 where a party "has a reasonable good faith
 belief in the merit of his action." J.W. v.
 L.R., 325 N.J. Super. 543, 548 (1999). In
 discussing the frivolous litigation statute,
 the Supreme Court, in McKeown-Brand v. Trump
 Castle Hotel & Casino, 132 N.J. 546, 561-62
 (1993), explained the legislative history as
 follows:

 The predecessor bill, A. 1086,
 allowed the prevailing party to
 recover fees from the non-
 prevailing party if that party's
 pleading was "not substantially
 justified." In the course of the
 legislative process, the term
 "frivolous" replaced "not
 substantially justified." Senate
 Judiciary Committee Statement to
 Assembly Committee Substitute for
 A. 1086, 2029, 783, and 1260 (Oct.

 21 A-0255-15T3
 2, 1986). Indeed, the Governor's
 conditional veto message noted the
 "bill's restrictive definition of
 'frivolous.'" The replacement of
 "not substantially justified" with
 "frivolous" reflects the
 legislative intent to limit the
 application of the statute. That
 limitation is consistent with the
 premise that in a democratic
 society, citizens should have ready
 access to all branches of
 government, including the
 judiciary.

 [Tagayun, supra, 446 N.J. Super. at 579-81.]

 In our review, the court, not Alliance, is responsible for

the confusion created by assigning two judges to handle separate

aspects of a single matter. The record suggests each judge

reviewed a single aspect of the case without regard to other

pending issues.

 Another troubling aspect contained in the trial judge's

opinion is the reference to his consultation with the motion judge,

which resulted in her sua sponte vacation of her prior order to

dismiss Reguitti's counterclaim. Although a judge has the right

to amend or vacate an interlocutory order, he or she may not do

so without complying with due process requisites. The Supreme

Court has instructed:

 It is well established that "the trial
 court has the inherent power to be exercised
 in its sound discretion, to review, revise,
 reconsider and modify its interlocutory orders

 22 A-0255-15T3
 at any time prior to the entry of final
 judgment." Johnson v. Cyklop Strapping Corp.,
 220 N.J. Super. 250, 257 (App. Div. 1987),
 certif. denied, 110 N.J. 196 (1988) (emphasis
 added); see also Marconi v. Wireless Telegraph
 Co. of Am. v. United States, 320 U.S. 1, 47,
 63 S. Ct. 1393, 1415, 87 L. Ed. 1731, 1757
 (1943) (finding trial court has "power at any
 time prior to entry of its final judgment
 . . . to reconsider any portion of its decision
 and reopen any part of the case"). That power,
 which is rooted in the common law, see, e.g.,
 Lyle v. Staten Island Terra Cotta Lumber Co.,
 62 N.J. Eq. 797, 805 (E & A 1901), is broadly
 codified in Rule 4:42-2, which provides
 expansively that "any order . . . which
 adjudicates fewer than all the claims as to
 all the parties shall not terminate the action
 as to any of the claims, and it shall be
 subject to revision at any time before the
 entry of final judgment in the sound
 discretion of the court in the interest of
 justice." (Emphasis added); see also R. 1:7-
 4(b) ("Motions for reconsideration of
 interlocutory orders shall be determined
 pursuant to R. 4:42-2."). That Rule, like the
 jurisprudence on which it is based, sets forth
 no restrictions on the exercise of the power
 to revise an interlocutory order.

 . . . .

 Although the rule is expansive, the power
 to reconsider an interlocutory order should
 be exercised "only for good cause shown and
 in the service of the ultimate goal of
 substantial justice." Johnson, supra, 220
 N.J. Super. at 263-64 . . . .

 [Lombardi v. Masso, 207 N.J. 517, 534, 536,
 (2011).]

In doing so:

 23 A-0255-15T3
 Procedurally, where a judge is inclined
 to revisit a prior interlocutory order, what
 is critical is that he [or she] provide the
 parties a fair opportunity to be heard on the
 subject. It is at such a proceeding that the
 parties may argue against reconsideration and
 advance claims of prejudice, . . . . Moreover,
 once the judge has determined to revisit a
 prior order, he [or she] needs to do more than
 simply state a new conclusion. Rather, he [or
 she] must apply the proper legal standard to
 the facts and explain his reasons.

 [Id. at 537.]

 Here, even if the motion judge determined she entered the

order of dismissal in error, Lombardi's procedural safeguards must

be followed. They were not.

 For all of these reasons, we vacate the order imposing

sanctions. The matter is remanded for further proceedings

including case management and scheduling of Alliance's motion to

dismiss Reguitti's motion seeking judgment on the counterclaim.

To the extent Alliance raises other arguments not specifically

addressed in our opinion, we have determined further discussion

was not warranted. R. 2:11-3(e)(1)(E).

 In his cross-appeal, Reguitti argues the trial judge erred

when he denied the request to supplement proof of attorney's fees

and costs incurred since September 21, 2014. The identified

deficiencies requiring the order to be vacated, obviate

consideration of this claim.

 24 A-0255-15T3
 Finally, based on our opinion, which includes setting aside

the order based on deficient or erroneous factual findings, we

require the case be reassigned by the Presiding Judge of the Civil

Division to a different judge to conduct the remand proceedings.

See In re Baby M., 109 N.J. 396, 463 n.19 (1988) ("The original

trial judge's potential commitment to [his] findings and the extent

to which a judge has already engaged in weighing the evidence,

persuade us to make that change." (citations omitted)).

 Reversed and remanded for further proceedings consistent with

this opinion.

 25 A-0255-15T3