**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4957-16T3

LOIS CHIPEPO, Administrator
ad Prosequendum and General
Administrator of the ESTATE OF
KEITH CHIPEPO, deceased,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY, NEW
JERSEY STATE POLICE, STATE
TROOPER VICTOR PEREIRA,
STATE TROOPER ANTHONY
SARDANOPOLI, STATE TROOPER
WILLIAM LEGG, and STATE
TROOPER RODRIGO NIVIA,

     Defendants-Respondents,

and

GRAND MEDICAL TRANSPORTATION,
LLC, TRAVERN HUMPHREY, NOEL
GAYLE, COUNTY OF ESSEX, ANDRES
ULERIO, and JAMES STERLING,

     Defendants.

_____

Argued October 16, 2018 – Decided November 15, 2018

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7853-14.

Alan Roth argued the cause for appellant (Bendit Weinstock, PA, attorneys; Alan Roth and Eryn Fernandez-Ledon, on the briefs).

Daniel M. Vannella, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Randall B. Weaver, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Lois Chipepo appeals from an order entered by the Law Division on June 9, 2017, which granted summary judgment in favor of defendants State of New Jersey, New Jersey State Police (NJSP), and State Troopers Victor Pereira, William Sardanopoli, William Legg, and Rodrigo Nivia.  We affirm.

I.

This appeal arises from the following facts.  On the morning of November 19, 2012, troopers Nivia and Legg were on patrol driving west on Clinton Avenue in Newark.  They noticed a blue Chrysler Pacifica driving erratically in the opposite direction.  James Sterling was driving the blue Pacifica.  Nivia and Legg activated the emergency lights on their police vehicle, made a U-turn, and

attempted to follow the blue Pacifica. After completing the U-turn, Nivia and Legg lost sight of the car. They called in a description of the vehicle over the police radio to alert other police officers in the area.

Troopers Pereira and Sardanopoli were on patrol nearby and heard the radio transmission. Pereira was driving the police vehicle. Within minutes, the troopers observed a vehicle drive past them at a high rate of speed heading north on South 9th Street. The troopers were stopped at a red light at the intersection of 15th Avenue and South 9th Street. They recognized the vehicle as the one described in the radio transmission and decided to follow.

Pereira and Sardanopoli activated the emergency lights on their vehicle and made a left turn onto South 9th Street, heading north. Plaintiff claims the troopers did not activate their sirens, but the record does not indicate whether the Troopers did or did not do so. While making the turn, Sardanopoli issued a radio transmission explaining that they had observed the blue Pacifica and reported its location.

At his deposition, Sardanopoli testified that, after they completed the turn onto South 9th Street, he and Pereira saw that the blue vehicle had already traveled more than one-and-one-half blocks ahead of them on South 9th Street and was approaching South Orange Avenue "at a high rate of speed." Seconds

3

later, Sterling drove the blue Pacifica through a red light at South Orange Avenue and struck an ambulance that was traveling east through a green light. Following the impact, the ambulance spun counterclockwise and was struck by a truck that was also traveling east through the green light. The ambulance rolled on its side and struck another vehicle.

Pereira and Sardanopoli witnessed the collision. They immediately issued a second radio transmission reporting the blue Pacifica had crashed at the intersection of South 9th Street and South Orange Avenue. The troopers approached the accident scene. Sterling abandoned his car and attempted to flee the scene on foot. The troopers exited their vehicle, chased Sterling, and apprehended him. The troopers then returned to the accident scene to respond to the emergency.

Attendant Keith Chipepo (Chipepo) and patient Martha Conley were riding in the ambulance when it was struck by the blue Pacifica. Chipepo, Conley, and others were injured in the crash. They were transported to a hospital. Chipepo and Conley died as a result of the injuries they sustained in the accident.

After he was taken into custody, Sterling provided a statement to the Essex County Prosecutor's Office. Sterling said that before the crash, he did not see a

4

police vehicle following him or hear any sirens. He stated that if he had heard the sirens, he would have pulled over. Sterling admitted he had been driving with a suspended license, but said he had no reason to run from the police.

At the time of the accident, Noel Gayle also was driving a vehicle on South Orange Avenue, on the left of the ambulance. Gayle said she saw the blue Pacifica run the red light at the intersection of South 9th Street and South Orange Avenue. Gayle saw the blue Pacifica strike the ambulance on the right.

On November 3, 2014, plaintiff, the Administrator of Chipepo's Estate, filed a complaint in the Law Division and asserted claims against defendants pursuant to the New Jersey Tort Claims Act (TCA or the Act), N.J.S.A. 59:1-1 to 12-3.[1] Plaintiff alleged defendants were negligent in their investigation, and negligent and careless in failing to follow appropriate NJSP vehicle pursuit policies. Plaintiff further alleged that defendants were negligent and careless in failing to provide and receive adequate training regarding police chases, including the failure to follow standards and methods for a police chase. Plaintiff claimed defendants' negligence and carelessness caused Chipepo's death. Defendants filed an answer denying liability.

---

[1] Plaintiff also named Grand Medical Transportation, LLC, Travern Humphrey, Noel Gayle, the County of Essex, Andres Ulerio, and Sterling as defendants. It appears that the claims against these other defendants have been resolved.

Thereafter, defendants filed a motion for summary judgment. Defendants argued that plaintiff had not presented competent evidence to support a finding that Sterling knew the troopers were pursuing him, and therefore, any actions or omissions by the troopers could not have been a proximate cause of Chipepo's death. Defendants also argued that even if the troopers' actions were a proximate cause of Chipepo's death, they were entitled to immunity from liability under the TCA.

In January 2017, after hearing oral arguments, the motion judge denied defendants' motion for summary judgment. The judge found there was a genuine issue of material fact as to whether Sterling knew the troopers were pursuing him before the collision.

Defendants later filed a motion for reconsideration. In June 2017, the judge heard oral arguments on the motion, and placed his decision on the record. The judge found that defendants were entitled to immunity under the TCA. The judge filed an order dated June 9, 2017, granting defendants' motion for reconsideration and for summary judgment. This appeal followed.

On appeal, plaintiff argues: (1) the trial court erred by granting summary judgment to defendants because there are genuine issues of material fact; (2) the applicability of the TCA immunity for police pursuits should have been

submitted to the jury; and (3) defendants' motion for reconsideration was improperly granted because there was no rational basis to reconsider the denial of defendants' summary judgment motion.

## II.

We turn first to plaintiff's contention that the trial court erred by granting summary judgment.  Plaintiff contends there are genuine issues of material fact as to whether defendants were entitled to immunity from liability under the TCA for the fatal injuries Chipepo sustained in the collision.

When reviewing a trial court's order of summary judgment, we apply the same standards the trial court applies.  Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).  The trial court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).  "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact."  R. 4:46-2(c).

A-4957-16T3

The TCA provides in pertinent part that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2(a). The TCA further provides that "[e]xcept as otherwise provided by this [A]ct, a public employee is liable for injury caused by his act or omission to the same extent as a private person." N.J.S.A. 59:3-1(a). A public employee's liability for injury is, however, "subject to any immunity of a public employee provided by law[.]" N.J.S.A. 59:3-1(b).

The TCA grants immunity from liability to police officers for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2(c). However, N.J.S.A. 59:3-14(a) states that, "Nothing in this [A]ct shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."

In Fielder v. Stonack, 141 N.J. 101, 126 (1995), the Court held that "willful misconduct in a police vehicular chase has two elements: (1) disobeying either a specific lawful command of a superior or a specific lawful standing

order and (2) knowing of the command or standing order, knowing that it is being violated and, intending to violate it." Ibid.

On appeal, plaintiff argues that there is a genuine issue of material fact as to whether the troopers violated a standing order of the NJSP when they pursued Sterling's blue Pacifica. Plaintiff contends the troopers violated the "New Jersey Police Vehicular Pursuit Policy," dated November 5, 2010, which was issued by the Attorney General, and thereafter adopted by the NJSP as a Standard Operating Procedure (SOP). Plaintiff asserts that the SOP is a lawful "standing order," as that term is used in Fielder. Plaintiff also contends there is sufficient evidence to show the troopers knew of this policy, knew they were violating it, and intended to violate it.

The NJSP's SOP states in pertinent part that a member of the NJSP has the authority to attempt to stop any person "suspected of having committed any criminal offense or traffic violation." The SOP provides that the decision to pursue "should always be undertaken with an awareness of the degree of risk to which the member exposes themselves and others." The SOP states that a member may only engage in a pursuit if at least one of the following conditions exists:

a. The member reasonably believes that the violator has committed an offense of the first or second degree, or an offense enumerated in . . . this order[, or]

b. The member reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers which is greater than the threat posed by the pursuit itself.

The SOP also states, "[p]ursuit for motor vehicle offenses alone is not authorized unless the violator's vehicle is being operated so as to pose an immediate threat to the safety of any person."

The SOP further provides that even if authorized, "a pursuit should not be automatically undertaken." In deciding whether to pursue, the trooper should consider:

1. Whether the identity of the violator is known to the point where later apprehension is possible

2. Likelihood of successful apprehension

3. Degree of risk created by the following:

a. Volume, type, speed, and direction of vehicular traffic

b. Nature of the area: residential, commercial, school zone, open highway, etc.

c. Population density and volume of pedestrian traffic

d. Environmental factors, such as weather, darkness, lighting, and visibility

e. Road conditions, such as construction, poor repair, extreme curves, intersections controlled by traffic signals or signs, ice, etc.

4. Experience with emergency vehicle operation

5. Familiarity with the area

6. Knowledge of police vehicle condition

In addition, the SOP states that upon commencement of a pursuit, the pursuing officer "will immediately activate emergency lights, audible device, headlights, MVR unit and microphone(s)." These devices will "remain activated for the duration of the pursuit."

The SOP also establishes certain restrictions on vehicular pursuits. It provides, in part, that "[to] diminish the likelihood of a pursuit, a member intending to stop a vehicle for any violation of the law shall, when possible and without creating a threat to public safety, close the distance between the two vehicles prior to activating emergency lights and an audible device." The SOP states that while attempting to close the distance and before initiating a pursuit, the officer "shall recognize" that "they are subject to all motor vehicle laws governing the right of way."

11

Here, the trial court correctly determined that plaintiff failed to present sufficient evidence to establish defendants engaged in "willful misconduct." The evidence does not support a finding that the troopers disobeyed a lawful command or standing order, as explained in Fielder.

To establish that a law enforcement officer engaged in "willful misconduct" during a police chase, the plaintiff must show that the officer knowingly and intentionally violated a "specific lawful command of a superior" or a "specific lawful standing order." Fielder, 141 N.J. at 126. A policy guideline constitutes such a "lawful command of a superior" or a "lawful standing order" if it is specific and does not permit the officer to exercise discretion. See id. at 128 (implying that police department policy would not constitute a standing order if it "allowed individual officers to exercise discretion based on their assessment of a given situation").

In this case, it is undisputed that the troopers observed Sterling driving erratically and at a high rate of speed on a street in a densely-populated area of Newark. The SOP permits troopers to pursue a vehicle for a motor vehicle offense if it "is being operated so as to pose an immediate threat to the safety of any person." Moreover, the SOP expressly gives troopers discretion to

determine whether the operation of the vehicle presents an immediate threat to the public safety that is "greater than the threat posed by the pursuit itself."

Nothing in the SOP precluded the troopers from exercising that discretion and choosing to pursue Sterling's vehicle. Plaintiff failed to present sufficient evidence to show that, when doing so, the troopers disobeyed any specific lawful command or standing order. Therefore, a reasonable fact-finder could not determine that the troopers' exercise of discretion constituted "willful misconduct" under N.J.S.A. 59:3-14.

Plaintiff argues, however, that the troopers violated the SOP in pursuing Sterling's vehicle. In support of this argument, plaintiff relies on a report of her expert, Francis R. Murphy, a forensic consultant in the fields of public law enforcement and private security. In his report, Murphy concludes the troopers did not adequately evaluate the increased risk to the general public before commencing their chase. Murphy states that the SOP requires troopers to conduct "a mandatory risk assessment" in determining whether to pursue a vehicle, and must consider, among other factors, population density, traffic, time of day, speeds, vehicular traffic, and the type of roadways involved.

Murphy asserts that Pereira and Sardanopoli "did not appear to have given any of the factors due consideration or weight to capture a speeder." He opines

A-4957-16T3

that this amounts to "a gross deviation" from the NJSP's police pursuit policy and generally accepted law enforcement practices. He asserts that the four troopers engaged in a pursuit, without making "any deliberative assessment of an increased risk to public safety[.]" He states that the troopers' actions were "intentional violations of the policy."

We are convinced, however, that the troopers' alleged failure to properly evaluate the risk to the public of engaging in a vehicular pursuit does not constitute a violation of a specific lawful standing order or command for purposes of determining if the troopers engaged in "willful misconduct" under N.J.S.A. 59:3-14(a). The evidence does not support an inference that the troopers failed to adequately assess the risk to the public of pursuing the Sterling vehicle.

Moreover, as we have explained, the SOP gives troopers discretion to engage in a pursuit if they "reasonably believe that the violator poses an immediate threat to the safety of the public or other police officers which is greater than the threat posed by the pursuit itself." Under Fielder, an error in judgment or even a technical violation of such a discretionary guideline does not constitute "willful misconduct" under N.J.S.A. 59:3-14(a). See Fielder, 141

14

N.J. at 128. Therefore, defendants are entitled to immunity under N.J.S.A. 59:5-2(c).

Plaintiff further argues that there is some evidence in the record that the troopers failed to comply with the SOP because they allegedly did not activate the sirens on their vehicles while pursuing Sterling's blue Pacifica. As noted, the SOP states that a trooper must activate emergency lights and audible devices when beginning a vehicle pursuit. The record is not clear as to whether the troopers did, in fact, activate their sirens. Assuming that the troopers did not activate their sirens when they began their pursuit, there is insufficient evidence to support the conclusion that they knowingly and willfully failed to do so.

We note that plaintiff also argues that there was sufficient evidence to support an inference that Sterling knew he was being pursued by the police. That fact is not, however, material to whether defendants are entitled to immunity under the TCA. Whether Sterling knew he was being pursued or not, the evidence does not support a finding that defendants engaged in "willful misconduct" when they pursued Sterling's vehicle.

We conclude the motion judge correctly determined that there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law. R. 4:46-2(c). The record supports the judge's determination that

defendants were entitled to immunity under N.J.S.A. 59:5-2(c), and plaintiff failed to present sufficient evidence to show defendants' conduct constitutes "willful misconduct."

In view of our decision, we need not address defendants' argument that they are also entitled to immunity under N.J.S.A. 59:3-3 for the good faith enforcement of the law.

## III.

On appeal, plaintiff also argues that the judge erred by reconsidering its earlier decision denying defendants' motion for summary judgment. The contention lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). However, we note the following.

Rule 4:49-2 permits a party to move for rehearing or reconsideration of a judgment or order, and a motion to reconsider an interlocutory order may be made at any time until final judgment. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 262-63 (App. Div. 1987). A motion for reconsideration is committed to the sound discretion of the court, and the court should exercise such discretion in the interest of justice. Id. at 263-64.

Reconsideration under Rule 4:49-2 is warranted when "(1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2)

it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, the motion judge reconsidered his earlier decision denying defendant's motion for summary judgment, which was based on the conclusion that there was a genuine issue of material fact as to whether Sterling knew the troopers were pursuing him when the collision occurred. The judge later recognized that defendants had established they were entitled as a matter of law to immunity under the TCA, regardless of whether Sterling knew he was being pursued. Therefore, reconsideration of the earlier decision was not a mistaken exercise of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4957-16T3