220 N.J. Super. 250 (1987)
531 A.2d 1078
WOODROW JOHNSON, JR., PLAINTIFF-RESPONDENT,
v.
CYKLOP STRAPPING CORP. AND FMC CORP., DEFENDANTS-RESPONDENTS, AND LEVINE INDUSTRIES, INC., DEFENDANT-APPELLANT, AND ACME CORP., JOHN DOE, JACK DOE, SAM DOE, JERRY DOE, AND PHIL DOE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1987.
Decided October 6, 1987.
*252 Before Judges PRESSLER, BILDER and MUIR, Jr.
Louis Pashman argued the cause for appellant (Cummins, Dunn & Pashman, attorneys; Louis Pashman, of counsel; Warren S. Robins, on the brief).
Roscoe L. Lamb argued the cause for respondent Johnson (Lamb & Kern, attorneys; Roscoe L. Lamb, on the brief).
Eugene M. Haring argued the cause for respondent FMC (McCarter & English, attorneys; Eugene M. Haring, of counsel; Rosalie Burrows, on the brief).
Leon B. Piechta argued the cause for respondent Cyklop (O'Donnell, Kennedy, Vespole & Piechta, attorneys; Leon B. Piechta, of counsel; Frances J. Panzini-Romeo, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*253 The jury in this personal injury-products liability action returned a substantial verdict in favor of plaintiff Woodrow Johnson, Jr., against defendant Levine Industries, Inc. The trial had proceeded against Levine alone after the judge denied Levine's application for relief from summary judgments earlier entered which had dismissed all claims, including Levine's cross-claims for contribution and indemnity, against the other two defendants, Cyklop Strapping Corporation and FMC Corporation. Levine appeals, claiming not that there was any error in the trial itself but rather, in essence, that it was improperly denied its right to pursue its cross-claims. We agree with this contention. We are persuaded that Levine's motion for relief from the summary judgments in favor of Cyklop and FMC was incorrectly denied, the fundamental error of the trial judge lying in his mistaken application to interlocutory orders of the standards for relief from final dispositions prescribed by R. 4:50-1. Having concluded, moreover, that Cyklop and FMC were erroneously relieved prior to trial from all responsibility for plaintiff's injury, we further hold that the rectification of this error must be accomplished without affecting plaintiff's right to the benefit of his verdict against Levine.
This is how the important procedural issues involved in the appeal came about. Plaintiff Woodrow Johnson, Jr., had been employed as a foreman by Polyfilm, Inc., a manufacturer of, among other products, plastic bags. Plaintiff's duties included the task of loading the finished product on skids and then securing the skids with strapping material fastened by a buckle. On December 3, 1981, plaintiff, while performing this task, was tightening the strapping material when the strap broke, hurling the buckle into his left eye. As a result of the trauma, he permanently lost his vision in that eye. His ensuing complaint, which alleged a causative defect in the design and manufacture of the strapping material, joined a number of defendants identified as distributors or manufacturers of the strapping. By the time the critical procedural events took *254 place, however, the only actively participating and potentially liable defendants were Levine, Cyklop and FMC, each of whom, in addition to their perfunctory denials of the allegations of the complaint and their assertions of apparently frivolous affirmative defenses thereto, had also cross-claimed against the other two for contribution and indemnification.
After some discovery proceedings had been engaged in, both FMC and Cyklop moved for summary judgment dismissing all claims against it. While plaintiff opposed both motions, Levine, inexplicably, did not participate in either.[1] According both plaintiff and Levine the benefit of all favorable facts and inferences, the record on the jointly heard motions showed the following facts. Levine, although it manufactures some packaging goods, is only a distributor of the strapping material here in question. It sells this material in rolls in the same form in which it purchases it from the manufacturer without alteration or processing of any kind. Polyfilm was one of Levine's strapping customers, and plaintiff testified, both on deposition and at trial, that the strapping which broke had arrived in a shipment from Levine to Polyfilm on the very day of the accident. Levine's potential liability as a link in the distributive chain was thus established.
As to the liability of the other two defendants, the import of the deposition testimony of Alan Levine, Levine's manager of operations, was that Levine had originally purchased the strapping material only from FMC, which manufactured it. In November 1980 FMC sold its entire industrial packaging division, including its remaining inventory, to Cyklop, which appears to have been created as a subsidiary of its parent German company for the purpose, among others, of continuing the business of that FMC division. All FMC customers were appropriately *255 notified of this succession by Cyklop.[2] Thus, after November 6, 1980, Levine purchased strapping only from Cyklop. Mr. Levine further testified on deposition that during the 13-month period between the date of the transfer from FMC to Cyklop and the date of the plaintiff's accident, Levine made regular purchases from Cyklop, generally in three-month intervals, as well as regular sales to Polyfilm. Relying on Levine's average three-month turnover in inventory, Mr. Levine believed that the December 3, 1981 shipment to Polyfilm, which had contained the allegedly defective strapping, had most probably come from Cyklop. He could not, however, be certain that that shipment or part of it had not come to it from FMC prior to November 6, 1980, since Levine did not have a regular system of inventory management, the boxes of material were not labelled as to origin, and Mr. Levine was unable, despite his search therefor, to locate any conclusive inventory record.
Levine's inability to identify with certainty the manufacturer of the December 3, 1980 shipment to Polyfilm was the gravamen of FMC's and Cyklop's summary judgment motions. The motion judge, focusing on the question of the manufacturer of the goods rather than on the question of the identity of the party from whom Levine had purchased them, was of the view that plaintiff's failure conclusively to establish the manufacturer's identity was fatal to his claims against both FMC and Cyklop. He also concluded that the circumstances respecting these two defendants did not invoke the doctrine of Anderson v. Somberg, 67 N.J. 291 (1975), cert. den. 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975), under which plaintiff's burden of proving which of several defendants is actually culpable shifts to the burden of each defendant to exclude itself from culpability. And finally, the judge was of the view that the successor liability doctrine enunciated by Ramirez v. Amsted Industries, *256 Inc., 86 N.J. 332 (1981), was not applicable to Cyklop's acquisition from FMC since Cyklop had purchased only a division of FMC, leaving FMC itself intact as a viable, continuing and responsible entity.[3] Accordingly, on February 15, 1985, the judge entered summary judgments dismissing all affirmative claims made by all other parties against both FMC and Cyklop.
Approximately a year later, while preparing for a then scheduled but ultimately adjourned March 1986 trial date, Levine fortuitously discovered old inventory records which had, it claimed, long since been haphazardly placed in an unused desk drawer. Among them was a card on which its running inventory balances of strapping material were noted. An entry on the card apparently showed that in May 1981, after the sale by FMC to Cyklop but prior to the accident, Levine's strapping inventory was zero.[4] If this were in fact so, then Levine would have conclusively established that its December 3, 1981 shipment to Polyfilm was sold to it by Cyklop even if it could not establish whether Cyklop had manufactured it or had itself received it from FMC as part of the FMC inventory included in the sale to it of the FMC industrial packing division. Armed with this information, Levine on February 10, 1986, moved pursuant to R. 4:50-1 for relief from the summary judgments. More particularly, it relied on R. 4:50-1(b) which authorizes the court to relieve a party from a final judgment or order on the basis of "newly discovered evidence which would probably alter the judgment or order and which by due diligence could not *257 have been discovered in time to move for a new trial under R. 4:49." Without evaluating the significance of the "new evidence" offered, the motion judge denied Levine's application on the ground that the "due diligence" requirement of the rule had not been met. Trial of plaintiff's claims against Levine, the thus sole remaining defendant, took place in June 1986. The jury's unanimous response to the special interrogatories posed to it was that Levine had supplied strapping material to Polyfilm which was not reasonably safe for its intended use. The jury then unanimously awarded plaintiff damages of $200,000 to which prejudgment interest of $77,733.33 was added. Levine alone appeals.
We address first, as the dispositive issue, the propriety of the denial of Levine's February 1986 motion for relief from the prior summary judgments which had dismissed all claims made by all parties against Cyklop and FMC. The trial judge, as we have noted, predicated his denial on the assumption, concurred in by all parties, that Levine's application for relief was governed by the strict and exacting standards of R. 4:50. We conclude that that assumption is incorrect and that R. 4:50-1 does not apply to interlocutory orders entered prior to final disposition. We hold that the trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment.
R. 4:50-1, whose text has been virtually unchanged since its original adoption in 1948 as R. 3:60-2[5] provides in full as follows:
On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a *258 new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.
The reference in the opening sentence to a final judgment or order would seem on its face to foreclose any argument as to the character of the judicial disposition intended to be subject to the rule. In short, "final" appears to qualify both "judgment" and "order."[6] We are first persuaded that this is so by our examination of the history, text and construction of the cognate federal rule, Fed.R.Civ.P. 60(b), upon which R. 4:50-1 is based and whose text R. 4:50-1 follows almost verbatim.[7] Prior to 1946 the qualifying adjective "final" did not appear in the federal rule, and there was therefore some question raised in the federal courts as to whether the rule was intended to apply to interlocutory as well as final dispositions. Compare Fiske v. *259 Buder, 125 F.2d 841 (8th Cir.1942) with Bucy v. Nevada Const. Co., 125 F.2d 213 (9th Cir.1942). The view, moreover, that Fed.R.Civ.P. 60(b) did not apply to interlocutory orders was in large measure based upon the principle affirmed by John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922), that the federal courts have the inherent power to deal with their own interlocutory orders at any time before entry of final judgment. The rule, as there enunciated, was simply that "* * * if an interlocutory decree be involved, a rehearing may be sought at any time before final decree, provided due diligence be employed, and a revision be otherwise consonant with equity." (258 U.S. at 90-91, 42 S.Ct. at 199). And see Marconi Wireless Teleg. Co. v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943), in which Chief Justice Stone, opined that "* * * the court did not lack power at any time prior to entry of its final judgment * * * to reconsider any portion of its [interlocutory] decision and reopen any part of the case. * * * It was free in its discretion to grant a reargument based either on all the evidence then of record or only the evidence before the court when it rendered its interlocutory decision, or to reopen the case for further evidence." (320 U.S. at 47-48, 63 S.Ct. at 1415).
The question as to the scope of the application of Fed.R.Civ. P. 60(b) was conclusively settled by its amendment in 1946. One of the changes then made was the insertion of the word "final" prior to the phrase "judgment, order or proceeding." The explanation by the Advisory Committee leaves no possible doubt as to the intended effect of this amendment. Its note instructs that:
The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.
See 28 U.S.C.A., Rules 60-76, at p. 17. And see generally 7 Moore, Federal Practice, § 60.16(4). Since the 1946 amendment of Fed.R.Civ.P. 60(b), the federal courts have uniformly excepted *260 interlocutory orders from the constraints of Rule 60(b), recognizing the granting of relief from interlocutory orders is exclusively a matter of inherent judicial power. Thus, in an early explanation of the import of the 1946 amendment, the federal district court in Carter v. American Bus Lines, 22 F.R.D. 323, 325 (D.Neb. 1958), offered this analysis:
At the outset, it may be pointed out that although the Court has previously ruled on the second defense, this does not prevent a reconsideration of that defense. Rule 60(b) permits the Court to relieve a party from a final order on the grounds of "mistake, inadvertence, surprise, or excusable neglect." The order at hand was an interlocutory order. The Court's power to afford relief is therefore neither based on, nor bound by, the restrictions of Rule 60(b). * * *
This complete power over interlocutory decrees is stated in John Simmons Co. v. Grier Brothers Co., 1922, 258 U.S. 82, 90, 91, 42 S.Ct. 196, 199, 66 L.Ed. 475 * * *. Rule 60(b) as first adopted did not distinguish between final and interlocutory decrees, and was subject to the interpretation that it applied to both. See, 7 Moore's Federal Practice, Para. 60.16(4). The 1946 revision inserting the word "final" emphasizes the practice with regard to interlocutory decrees or orders. See Kliaguine v. Jerome, D.C.N.Y. 1950, 91 F. Supp. 809, where the court, relying on its power over interlocutory orders granted leave to file a new motion for summary judgment after a former motion for summary judgment had previously been denied.
See also, expressly rejecting the applicability of Fed.R.Civ.P. 60(b) to interlocutory orders and affirming the inherent power of the court to grant relief based on equitable considerations, Zimzores v. Veterans Admin., 778 F.2d 264, 266 (5th Cir.1985); Segar v. Smith, 738 F.2d 1249, 1285 (D.C. Cir.1984), cert. den. 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); Acha v. Beame, 570 F.2d 57, 63 (2d Cir.1978); Campos v. Puerto Rico Sun Oil Co., Inc., 536 F.2d 970, 972 (1st Cir.1976); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir.1970); Hafferman v. Westinghouse Elec. Corp., 653 F. Supp. 423, 426 (D.D.C. 1986); Johnson v. Township of Bensalem, 609 F. Supp. 1340, 1342 (E.D.Pa. 1985); Watwood v. Barber, 70 F.R.D. 1, 8 (N.D.Ga. 1976); Covey v. C.I.T. Corp., 71 F.R.D. 487, 489 (E.D.Okla. 1975). And most recently, in referring to a partial summary judgment, the Fifth Circuit Court of Appeals in Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1269 (5th Cir.1986), opined that it was not only "not appealable, but it remains within the plenary power of the district court to *261 revise or set aside in its sound discretion without any necessity to meet the requirements of Fed.R.Civ.P. 60(b)."
The inherent power of the court to modify its own interlocutory orders prior to the entry of final judgment has long since been recognized in New Jersey. The Court of Errors and Appeals embraced the doctrine in Lyle v. Staten Island Terra Cotta Lumber Co., 62 N.J. Eq. 797, 805 (E. & A. 1901). It was reconfirmed by the Chancery Court in Fidelity Union Trust Co. v. Petchensky, 119 N.J. Eq. 514, 516 (Ch. 1936) as follows:
"Nor have we any doubt of the power of a court, while a case and the parties are before it, upon proper hearing to reconsider, modify and enlarge its previous orders in respect to a pending controversy. Such power and such authority is so familiar and so well understood that we see no occasion for citing authorities in support of it." Calaf v. Fernandez (C.C.A.), 239 Fed.Rep. 795.
See also Falcon B. & L. Assn. v. Schwartz, 121 N.J. Eq. 27, 31 (Ch. 1936).
There is no indication we can discover in the formative years following the adoption of the 1948 State Constitution and the original set of rules of court, patterned on the federal rules, of an intention or understanding that these documents effected any limitation on that inherent power of the court. Indeed, the contrary seems to be so. As we have already pointed out, the original predecessor of R. 4:50-1 was adopted in 1948, two years after the cognate federal rule had been amended specifically to exclude interlocutory orders from its ambit. Moreover and even more significantly, our original rules included R. 3:54-2, the predecessor of present R. 4:42-2 and the counterpart of Fed.R.Civ.P. 54(b), which clearly codified the inherent power of the court over its interlocutory orders, at least in multiple-claim actions, by providing that a claim disposed of interlocutorily is, as a general matter, "subject to revision at any time before the entry of judgment adjudicating all claims." This proviso is irreconcilably inconsistent with the notion that R. 4:50 applies to interlocutory orders. Moreover, on an a fortiori basis, we are compelled by logic to conclude that if the interlocutory disposition of an entire separable claim is subject *262 to revision prior to the entry of final judgment, then surely an interlocutory order affecting but not disposing of a separable claim must be as well.
We are further satisfied that these principles constituted, in those early days, an accepted procedural predicate. Thus, in Hogan v. Hodge, 6 N.J. Super. 55, 59 (App.Div. 1949), Justice [then Judge] Jacobs pointed out that while a determination not subject to immediate appeal remained "`subject to revision' at any time before disposition of the entire action," an immediately appealable order  that is, a final judgment  was subject to the relief provisions of R. 3:60-2, now R. 4:50-1. Finally, we point out that R. 4:50-1(b), the provision presumed applicable here, by its own terms has no constraining effect on an interlocutory order. That provision, as we have noted, authorizes relief on the basis of new evidence which by due diligence could not have been discovered "in time to move for a new trial under R. 4:49." Since the time to move for a new trial does not even begin to run until after final judgment, any motion for relief based on new evidence made before final judgment would be timely under the rule. See, e.g., Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., 191 F. Supp. 937, 938 (S.D.N.Y. 1961), rev'd on other grounds 308 F.2d 196 (2d Cir.1962).
Despite the apparent clarity of the intended limitation of R. 4:50 to final dispositions and despite the earlier assumption of our courts that R. 4:50 was in fact so limited, see, e.g., Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 124 (App.Div. 1963), certif. den. 40 N.J. 508 (1963), this court in Quagliato v. Bodner, 115 N.J. Super. 133, 137 (App.Div. 1971), without citation of authority, reasoned analysis or consideration of the court's inherent power, simply declared that the exclusive recourse for a party aggrieved by an interlocutory order for whatever reason was either to seek leave to appeal pursuant to R. 2:2-4 or to seek relief pursuant to R. 4:50. The effect of this declaration was pervasive. Thus, in Ford v. Weisman, 188 N.J. Super. 614, 618 (App.Div. 1983), we agreed with the parties' contention that, "The issue before us is whether relief from an *263 interlocutory order may be granted under this rule [R. 4:50-1(f)] when a change in the governing case law occurs after the time to seek leave for interlocutory appeal has passed, but before litigation has ended." Paradoxically, however, we answered this question not in terms of R. 4:50 but rather in terms of the court's inherent power, holding that:
Therefore, we hold that the principle of finality of judgments does not prevent a trial court from granting relief from its interlocutory orders upon a change in the governing law before litigation ends. During this time, the trial court has complete power over its interlocutory orders and may revise them when it would be consonant with the interests of justice to do so. See John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922); 7 Moore, Federal Practice ¶ 60.16[4], at 87-88. See, also, Scheck v. Houdaille Constr. Materials, Inc., 121 N.J. Super. 335, 343-345 (Law Div. 1972). A contrary rule would wreak havoc in our appellate courts, because it would require that every litigant seek leave to appeal from every interlocutory order, to protect himself should the applicable law change before the end of litigation. [Id. at 619]
We now complete the full circle on which we embarked in Ford v. Weisman by holding unequivocally that review of interlocutory orders by the court prior to final judgment is governed not by R. 4:50 but is rather a matter committed to the sound discretion of the court.[8] While we thereby relieve the process of trial court review of its interlocutory orders from the constraints of R. 4:50, we nevertheless emphasize that the court's exercise of discretion is not subject to wanton invocation or unfettered judicial response. It is only *264 for good cause shown and in the service of the ultimate goal of substantial justice that the court's discretion should be exercised. Although this standard is necessarily expressed in general terms, it nevertheless is, in our view, endowed with an unmistakable substantive content by the common understanding which underlies our jurisprudence of what is fair, right and just in the circumstances.
Applying this standard here, we are satisfied that the court erred in denying Levine's motion for relief from the partial summary judgments. To begin with, we are of the view that the initial motion of Cyklop at least was erroneously decided. It is a basic principle of products liability law that not only the manufacturer of a defective product but also all subsequent parties in the regular chain of distribution are responsible in strict liability for damages sustained by the ultimate user as a result of the defect. See, e.g., Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982); Newmark v. Gimbel's Incorporated, 54 N.J. 585, 595 (1969). Irrespective of plaintiff's uncertainty of the identity of the manufacturer of the defective strapping, there was nevertheless an adequate factual basis in the summary judgment record to support a finding that Cyklop was Levine's source of supply, whether as manufacturer or as successor in interest of FMC's inventory. Cyklop's motion should have been denied. Moreover, if Cyklop were held in as a potential source of Levine's supply, then, it would seem clear, FMC should have been kept in as well, at least to respond to Cyklop's cross-claims against it in the event Cyklop could show that FMC had been its supplier of the defective shipment.
The evidence offered by Levine on its motion for relief, namely the newly discovered inventory card, constituted persuasive evidence that Cyklop had in fact been its immediate supplier. The judge, presented with this evidence, should have corrected his prior legal error, which lay in requiring not merely the demonstration of a genuine dispute of material fact *265 but rather definitive proofs. We are aware that Levine may have contributed to this initial error by failing to oppose the original motions and that it further exacerbated the problem by failing, during the next year, to locate the critical inventory card. But considering the pertinence, if not the conclusiveness, of that proferred evidence and Levine's apparent excusable neglect in discovering the evidence, we are satisfied that those failures should not have deprived plaintiff of the joinder at trial of another potentially culpable party or deprived Levine of a potentially culpable party owing it an obligation of contribution if not of indemnification. Moreover, while Levine's discovery of the document came relatively late in the litigation, trial was in fact still several months off, and sensible case management could have minimized any trial delay which would have attended the granting of Levine's motion for relief from the summary judgments.
The remaining question is the manner in which the error of the trial judge in denying Levine's motion for relief can best be rectified. It is clear that Levine's cause of action against Cyklop and any cause of action which Cyklop would have against FMC are claims for contribution or common-law indemnification. The parties must now be accorded the right which they have been denied to prosecute those claims. But we see no reason why the prospective prosecution of these independent, affirmative claims should in any way affect the finality or enforceability of plaintiff's verdict against Levine particularly since plaintiff has no further interest in prosecuting his direct affirmative claims against Cyklop and FMC. Compare, e.g., Young v. Steinberg, et al., 53 N.J. 252 (1969). We conclude that Levine must now prosecute its cross-claims against Cyklop and Cyklop its against FMC in a plenary proceeding in which both Cyklop and FMC may litigate the questions both of their respective liability and damages. As the Supreme Court made clear in Young v. Steinberg, et al., 53 N.J. 252, 255 (1969), where contribution is in issue, an alleged joint tortfeasor against whom a contribution claim is made is entitled to "have his day *266 in court as to both liability and damages." See also Antenucci v. Mr. Nick's Mens Sportswear, 212 N.J. Super. 124, 131 (App. Div. 1986). The same is clearly so in respect of a common-law indemnity claim. Cyklop's liability as a joint tortfeasor or as a common-law indemnitor has never been determined, and Levine must bear the burden of proving that liability now, as must Cyklop against FMC, should it elect to pursue its cross-claims against FMC. Moreover, since all claims against Cyklop and FMC were dismissed long before trial, we are of the view that both may readdress the damages issue as well in respect of their obligations on the cross-claims.
In so ruling, we recognize that pursuant to R. 4:37-2(e), a defendant against whom a claim is dismissed before final judgment is accorded the right to receive notice of and to participate in any subsequent proceedings. It is the clear import of this rule that ordinarily such a defendant is bound by a final adjudication which affects his interest. See, e.g., Pappas v. Santiago, 66 N.J. 140 (1974). We do not, however, construe this rule as applying to dismissals entered prior to the commencement of trial. It is our view that such a construction would be extremely impractical, unwieldly and burdensome to all parties. More importantly, we point out that the rule was adopted in direct response to the Supreme Court's perception in Pappas, that "a defendant who prevails at a separate trial of the liability issue should not have the claim against him dismissed at that time, and should be given notice of and an opportunity to participate in the trial on damages, since he will be bound by the damages fixed, in the event the ruling in his favor on liability is reversed." 66 N.J. at 145. The Court proposed to amend the Court rules to so provide. We do not believe it intended the continued participation of all named defendants irrespective of how early in the litigation they may have been let out. In the circumstances here, we see no ultimate unfairness to or undue burden on Levine in permitting Cyklop and FMC to fully litigate both the liability and damages issues on the trial of its cross-claims.
*267 The judgment awarding plaintiff damages against defendant Levine Industries, Inc. is affirmed. The interlocutory order denying defendant Levine's motion for relief from the partial summary judgments theretofore entered dismissing all claims against defendants Cyklop and FMC is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] We note that Levine's appellate counsel was not trial counsel.
[2] Indeed, Cyklop, by letter to all FMC customers dated December 5, 1980, stated that, "As we previously advised, the Industrial Packaging Division of FMC is now Cyklop Strapping Corporation."
[3] Because we decide this appeal on other grounds, we do not address either the Anderson v. Somberg or the Ramirez issue.
[4] The precise date of the zero balance, as shown on the photocopy of the card reproduced in Levine's appendix is not clearly legible but appears to be in May 1981. Counsel, in argument before the trial court, suggested that the zero balance date was in June 1980, but since he argued that it was after the FMC sale to Cyklop, we assume he meant June 1981. While there may thus be some ambiguity as to the date, there is nevertheless adequate documentary evidence at this point to support the conclusion that it occurred between November 6, 1980 and December 3, 1981.
[5] In the 1953 general revision of the rules, R. 3:60-2 was designated R. 4:62-2 and in the 1969 general revision as R. 4:50-1, its present designation.
[6] The semantical alternative would be, of course, that "final" qualifies only "judgment" and the justification for that parsing would be that "order" is a term intended to refer to interlocutory dispositions while "judgment" is reserved for final dispositions. We reject that construction. First, if all judgments were final and all orders were interlocutory, the modifier "final" would be redundant. Furthermore, while distinction in finality may be suggested by the appropriate use of "judgment" and "order," nevertheless the notion of a "final order" is not an oxymoron since many dispositions denominated "orders" do in fact constitute final dispositions. Indeed, in this very case, although no form of judicially signed order was even necessary pursuant to R. 4:47(a), the action was finally disposed of by a document captioned "Order of Judgment," memorializing the jury verdict.
[7] The federal rule by its terms applies not only to a final judgment or order as does R. 4:50-1 but to a "final judgment, order or proceeding." The New Jersey rule, as originally adopted, used the same three-prong formulation until an amendment, effective September 1982, which eliminated the word "proceeding." As indicated by the Comment on that rule, see Current N.J. Court Rules, Comment 1 on R. 4:50 (Gann Ed. 1986), the reason for the deletion was the perception that "The use of the term `proceeding,' was inartful. It is not the proceeding itself from which the party ordinarily seeks relief but from the disposition in which the proceeding results * * *."
[8] We are aware that the amendments of R. 1:7-4 and R. 4:49-2, effective January 1987, introduced an unrelaxable ten-day motion for reconsideration practice into our rules. Since we conclude that those amendments were intended to liberalize the reconsideration practice rather than to restrict it, we construe the ten-day practice provided for by both of those rules as applicable to final dispositions rather than interlocutory orders. This conclusion is reinforced by the fact that R. 2:4-3(e) was simultaneously amended to provide that the time for appeal is tolled by the making of a motion for rehearing or reconsideration pursuant to R. 1:7-4 or R. 4:49-2. The tolling of the time to appeal is, of course, a consideration which is only relevant to a final disposition. Consequently, the inclusion of the ten-day practice provision in the tolling rule indicates that the intended applicability of the ten-day practice was limited to final judgments.