**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5450-15T4

MAIN LAND SUSSEX
COMPANY, LLC,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

PRITI SHETTY and
SANDESH SHETTY,

      Defendants-Appellants/
      Cross-Respondents,

and

JITENDRAKUMA PATEL, a/k/a
JEETENDRA PATEL, JIGNA
PATEL, RAHUL GAJIPARA,
and JAYSHREE R. GAJIPARA,

      Defendants.

_____

Argued November 28, 2018 – Decided March 8, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0480-14.

Evan M. Goldman argued the cause for appellants/cross-respondents (Hill Wallack, LLP, attorneys; Evan M. Goldman, of counsel and on the briefs; Scott D. Salmon, on the briefs).

Caterina DeVerna argued the cause for respondent/cross-appellant (Mainardi & Mainardi, PC, attorneys; Caterina DeVerna and Edward Mainardi, Jr., on the briefs).

PER CURIAM

In this matter arising out of a commercial lease, we affirm the judgment, following a bench trial, entered against all defendants.[1] Defendants Priti and Sandesh Shetty (Shetty) appeal from the judgment. Plaintiff, Main Land Sussex Company, LLC, cross-appeals the denial of its attorney's fee application as well as the denial of certain discovery motions.

Priti,[2] Jitendrakuma Patel, and Rahul Gajipara formed ARCP, LLC, which leased space from plaintiff, the owner and landlord of a commercial shopping center. ARCP operated a Dunkin' Donuts franchise (franchise) in the shopping center. Priti, Jitendrakuma, and Rahul were guarantors on the commercial lease.

---

[1] Plaintiff has subsequently settled with the Patel and Gajipara defendants.

[2] We use the defendants' first names for clarity and ease of the reader as the defendants share surnames.

Their spouses, Sandesh Shetty, Jigna Patel, and Jayshree Gajipara, were not guarantors on the lease, but all of the defendants were guarantors on certain ARCP loan obligations. Those obligations resulted in liens and mortgages on all of defendants' residences.

Several years into the lease term, the franchise began to experience financial difficulties. As a result, in 2010, plaintiff consented to the sale of the business to Preston Lewis Corporation (Preston). The lease, which had three years remaining on its term, was assigned to Preston as part of the sale. However, ARCP, Priti, Jitendrakuma, and Rahul remained liable as guarantors under the lease. The assignment required ARCP to satisfy any unpaid amounts due to plaintiff; that condition was satisfied at the closing.

Prior to the sale of the franchise and lease assignment to Preston, plaintiff's representative advised the lease guarantors they would not be released from the guarantee. Plaintiff's offer to buy out the guaranties for certain payment terms was declined by the guarantors.

In March 2011, within a year of the closing, Preston defaulted on the lease. After plaintiff obtained a judgment of possession, Preston filed for bankruptcy. When ARCP and the guarantors did not pay the rent or sewer bill, plaintiff instituted suit against the guarantors and ARCP. At the close of trial, an order

of judgment was entered against ARCP for $299,439.55 (inclusive of counsel fees), and judgment was entered against each of the three guarantors for $66,494.04. None of the judgment debtors made any payments towards the judgments.

As a result of its unsuccessful attempts to collect on the judgments, plaintiff filed the suit which underlies this appeal. Plaintiff alleged defendants committed a fraudulent transfer when they distributed all of ARCP's assets, following the sale of the franchise to Preston, without satisfying the payments owed under the lease.

At the second trial, Priti testified she was the managing member of ARCP, and Rahul and Jitendrakuma were the other members; all three had equal shares in the business. To finance the purchase and operation of the franchise, ARCP took out three loans: $50,000 from PNC Bank; $80,132.47 from Lakeland Bank; and $191,074.40 from GE Capital Solutions. The members personally guaranteed those loans. In addition, the members used their personal residences as collateral for the PNC Bank and Lakeland Bank loans, and mortgages were placed on their residences to secure those loans.

Even after Preston's purchase of the franchise, Priti testified she knew ARCP and the individual guarantors remained obligated under the lease for rent for the remaining term of the lease.

Priti confirmed that the closing statement from the sale of the franchise to Preston showed three checks payable to ARCP: $20,021.57 for the payoff of the ARCP loan from PNC Bank; $80,368.97 as the payoff of ARCP's loan from Lakeland Bank, and $191,074.40 for the payoff of ARCP's loan from GE Capital Solutions. The payments to Lakeland and PNC Banks released the corresponding mortgages on the members' residences. The payoff to GE Capital Solutions released the guarantors of the GE loan.

Three additional checks payable to ARCP totaling $326,793.19 went into ARCP's account. Those monies were distributed to the members in the spring of 2010. ARCP was no longer in business at the time.

Plaintiff presented Timothy King, who was qualified as an expert in accounting, fraudulent transfers, and dissolutions. In response to a hypothetical question at trial, King explained that if the sales proceeds from the closing of the franchise were used to pay personal mortgages of the members and their spouses, that would constitute the payment of a personal obligation made before the priority of any payment owed to actual and contingent creditors of the

company. In winding down a company, payments should be made to the creditors of the entity before paying mortgages of the principals and their spouses. Without consideration for such transactions, they would be considered fraudulent conveyances.

King concluded:

> As a landlord in this matter Main Land Sussex was a present and future creditor of ARCP [until] the end of the lease term. After the sale of ARCP's assets, ARCP did not reserve funds for its contingent liability to Main Land relative to the remaining term of the lease. Rather ARCP paid hundreds of thousands of dollars from the sale of the business to or for the benefit of the individuals as insiders and to the detriment of the creditor, Main Land Sussex.

In an oral decision on July 6, 2016, the trial judge determined plaintiff had demonstrated a fraudulent transfer under N.J.S.A. 25:2-25(a) by clear and convincing evidence. He analyzed the badges of fraud listed under N.J.S.A. 25:2-26 and found the evidence supported multiple factors establishing a fraudulent transfer. The judge entered a $291,464.94 judgment for plaintiff. Plaintiff's subsequent application for attorney's fees was denied.

On appeal, defendants raise a myriad of issues, asserting the court erred: 1) in permitting plaintiff's expert testimony; 2) in denying defendants' in limine motions; 3) in permitting improper comments of plaintiff's counsel during

summation; 4) in its ruling that defendants fraudulently transferred assets; and 5) in ignoring prior judgments entered against defendants. Although not raised to the trial court, defendants contend on appeal that the matter should be remanded for a new trial and heard by a different judge. Plaintiff asserts in its cross-appeal that the court erred in denying its application for counsel fees and denying various discovery motions.

We first address defendants' contention that the court erred in permitting plaintiff's expert to testify at trial. We review evidentiary rulings for an abuse of discretion, including the admissibility of expert testimony. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011); Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008).

Plaintiff first served an expert report from King in September 2015. It referred to a tax return of ARCP. The report did not discuss any implications of the tax return in its conclusion. The report contained the same concluding paragraph King testified to at trial.

Around this same time, plaintiff continued to seek all federal and state tax returns for ARCP. Defendants objected to this expansive demand and sought a

protective order. In September 2015, the court[3] agreed and found plaintiff had not "demonstrated that disclosure [would] serve a substantial purpose or that the information sought is not readily obtainable through other means. Further, [p]laintiff seeks the entire returns without limitation. Accordingly, good cause is not shown, and a [p]rotective [o]rder is entered" as to the tax returns.

In January 2016, defendants moved for an order barring plaintiff from producing any expert testimony at the time of trial because plaintiff had not served an expert report prior to the discovery end date of September 21, 2015. Citing plaintiff's failure to file an expert report in accordance with the deadlines, the trial judge granted defendants' motion on January 13, 2016.

Despite the prior deadlines, the record reflects a discovery deadline of February 29, 2016, and a trial date of March 21, 2016. When plaintiff's counsel was injured, requiring surgery and a recuperation period, he requested an adjournment of the trial date and sought to reschedule depositions of defendants. Following a conference with the presiding judge, a March 21, 2016 order set a peremptory trial for May 25, 2016. Dates were also delineated for the filing of in limine motions, responses, and pre-trial information statements.

---

[3] This is a different judge than the one who entered subsequent orders and conducted the bench trial in May and June 2016.

A-5450-15T4

Defendants filed several in limine motions. In response, plaintiff opposed the motions and filed a cross-motion seeking to vacate the January 13, 2016 order and to permit King to testify as an expert at trial. The judge assigned to preside over the trial advised he would hear the motions on the first day of trial.

The parties continued to engage in discovery. Depositions of defendants were taken on March 30 and April 20, 2016. A representative of plaintiff was deposed on April 22, 2016.

Plaintiff served King's expert report for a second time on April 27, 2016. Other than the redaction of any reference to tax returns, in compliance with the September 2015 order, the report was identical to that previously served in September 2015. Plaintiff's counsel advised King was available for deposition. Defense counsel declined to depose King.

On the first day of trial, the judge considered the parties' in limine applications. Pertinent to this appeal is the discussion of King's expert report. The trial judge informed counsel that he was mistaken in barring King's report on January 13, 2016, because he believed a prior judge had adjudicated the issue. The judge also noted discovery was reopened twice since September 2015, and the parties had continued to conduct discovery up until the date of trial. The judge, therefore, vacated his prior order conditioned on the production of King

9

for deposition. Plaintiff renewed his offer to produce King for deposition. Defense counsel responded that he did not intend to depose King as long as the expert was limited to the contents of his report.

Up until a final disposition, a "trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:50-1 (2018) ("Interlocutory orders are reviewable at any time in the interest of justice and in the court's discretion.").

Here, the trial judge conceded he entered the January 13, 2016 order under the mistaken belief there had been "an adjudication of the case." Furthermore, the judge noted the rationale for barring the expert report, as beyond the discovery end date was not viable, because discovery had been extended twice since the original end date. King's report was served again in April 2016, with no changes other than the redaction of any reference to tax returns in accordance with the September 2015 order. King was available for deposition and was specifically limited to the contents of his report.

Under the circumstances presented here, the trial judge was authorized to reconsider his January 13, 2016 order to correct his mistake, and we are satisfied there was no abuse of discretion in doing so. Johnson, 220 N.J. Super. at 257; Pressler & Verniero, cmt. 2 on R. 4:50-1.

Defendants also objected on the first day of trial to the testimony of King as impermissible net opinion. Counsel added: "Not to suggest we believe Mr. King should testify at all. But if he is permitted to testify I would ask Your Honor to enter an order that limits him to the scope of his report." The judge replied that he intended to reserve on the net opinion issue but added King would be limited to "the four corners of his report." Neither counsel mentioned King in opening statements.

During King's direct testimony, defense counsel posited multiple objections. The court sustained the objections, limiting the expert only to any factual information presented in his report. King was not permitted to reference the badges of fraud under N.J.S.A. 25:2-26. King did proffer the sole opinion set forth in his initial September 2015 report and reiterated in his April 2016 report. He found plaintiff remained a creditor of ARCP until the end of the lease term. He noted ARCP did not reserve any funds for its contingent liability to plaintiff after the sale of ARCP's assets. He concluded "ARCP paid hundreds

of thousands of dollars from the sale of the business to or for the benefit of the individuals as insiders and to the detriment of [plaintiff]."

At the end of King's direct testimony, defense counsel renewed his objection to the expert testimony as net opinion. In his consideration, the judge stated: "I think it might be a close question, but I think based on his experience I will allow his opinion testimony to at least be considered by the [c]ourt. Weight is obviously something which we have to redetermine what weight I give to it." The report was not admitted into evidence.

The judge permitted written submissions following the close of evidence and counsel presented oral closing arguments. Neither counsel mentioned King's testimony in their oral arguments. In his oral decision, the judge similarly made no reference to King's testimony.

We cannot discern a clear abuse of discretion in permitting King's testimony. Particularly in light of the lack of any reliance by the trial judge upon any aspect of King's testimony in his decision. In ruling, the court found plaintiff met its burden in proving there was a fraudulent transfer under N.J.S.A. 25:2-26. As King was not permitted to discuss the statute, there was no demonstration the court relied on King's testimony. Even if there was any error by permitting King to testify at trial, any such error was harmless error. R. 2:10-

12

2 ("harmless error" is one that was not by nature "clearly capable of producing an unjust result").

We turn to defendants' contention that the trial court erred in finding a fraudulent transfer of assets. In our review of a non-jury case, we will not disturb "the factual findings and legal conclusions of the trial judge unless . . . they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff alleged defendants violated the Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. 25:2-20 to -33, when it transferred monies received at the closing of the sale of the franchise to pay off debts and mortgages securing defendants' personal properties and distributed the remainder of the sales

proceeds to ARCP's members. The transfers rendered ARCP insolvent without paying the monies owed to plaintiff, the prior obligor.

The UFTA defines fraudulent transfer as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.
>
> [N.J.S.A. 25:2-25.]

The purpose of the UFTA "is to prevent a debtor from placing his or her property beyond a creditor's reach" and from "deliberately cheat[ing] a creditor by removing his property from 'the jaws of execution.'" Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (1999) (citation omitted). If a

A-5450-15T4

fraudulent transfer is proven, a creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."  N.J.S.A. 25:2-29(a)(1).  Where the transfer cannot be undone, a creditor may obtain a judgment for the value of the asset fraudulently transferred against "[t]he first transferee of the asset or the person for whose benefit the transfer was made."  N.J.S.A. 25:2-30(b)(1).  The UFTA also contains a catch-all provision, affording a creditor "[a]ny other relief the circumstances may require."  N.J.S.A. 25:2-29(a)(3)(c).

In <u>Gilchinsky</u>, our Supreme Court explained:

> In determining whether a transfer constitutes a fraudulent conveyance, there are two relevant inquiries. The first is "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them" at some point in time "but for the conveyance."  The second is whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor. Transfers calculated to hinder, delay, or defeat collection of a known debt are deemed fraudulent because of the debtor's intent to withdraw the assets from the reach of process.  Both inquiries involve fact-specific determinations that must be resolved on a case-by-case basis.  The person seeking to set aside the conveyance bears the burden of proving actual intent.
>
> In determining whether the circumstances of a particular transaction give rise to the conclusion that the transferor intended to thwart or evade creditors, courts generally look to factors commonly referred to

A-5450-15T4

> as "badges of fraud." "Badges of fraud" represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent.
>
> [159 N.J. at 475-76 (alteration in the original) (citations omitted)]

The plaintiff bears the burden of establishing a claim under the UFTA by clear and convincing evidence. Jecker v. Hidden Valley, Inc., 422 N.J. Super. 155, 164 (App. Div. 2011); Barsotti v. Merced, 346 N.J. Super. 504, 520 (App. Div. 2002).

The trial court analyzed the badges of fraud listed in N.J.S.A. 25:2-26 and determined plaintiff proved a fraudulent transfer under N.J.S.A. 25:2-25(a) by clear and convincing evidence. We are satisfied the court supported its determination with the credible evidence in the record.

ARCP transferred property to insiders - the three individual members and their spouses - all relatives, by paying off debts they personally guaranteed and mortgages secured by their personal residences. ARCP distributed the remainder of the sale proceeds to the members, which also benefited their spouses. See N.J.S.A. 25:2-26(a).

The members and their spouses retained possession and control of the property transferred after the transfer because their guaranties and mortgages

16

were released, and they also retained and used the sale proceeds that were distributed directly to the members. See N.J.S.A. 25:2-26(b).

The transfers consisted of all of ARCP's assets. See N.J.S.A. 25:2-26(e). The members removed assets by paying off the loans that they and their spouses had personally guaranteed, removing that money beyond the reach of plaintiff. See N.J.S.A. 25:2-26(g).

The transfers rendered ARCP insolvent under N.J.S.A. 25:2-23(a) ("A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation."), and (b) ("A debtor who is generally not paying his debts as they become due is presumed to be insolvent."). Plaintiff's contingent claim exceeded the value of ARCP's assets because ARCP did not have any remaining assets after the transfers, leaving ARCP unable to pay the rent obligation incurred prior to the transfers. Therefore, ample evidence supported the trial court's finding of a fraudulent transfer.

Defendants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We briefly address plaintiff's cross-appeal and its contention that the trial court erred in denying its application for attorney's fees. In denying the application, the trial judge stated:

I think [R]ule 4:42-9 . . . recognizes that the American rule is what we follow in litigation. And basically speaking, I don't find that anything under [UFTA] . . . which creates a right to counsel fees.

We are satisfied the trial judge acted within his discretion in following the general rule and denying plaintiff's fee application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-5450-15T4