**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1475-18T1

R&K ASSOCIATES, LLC,

     Petitioner-Respondent,

v.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
SITE REMEDIATION COMPLIANCE
AND ENFORCEMENT,

     Respondent-Respondent,

and

DES CHAMPS LABORATORIES,
INC.,

     Intervenor-Appellant.

_____

          Argued November 4, 2019 - Decided November 19, 2019

          Before Judges Sabatino, Geiger and Natali.

          On appeal from the New Jersey Department of Environmental Protection, Docket No. LSR12000-G000042626.

Daniel L. Schmutter argued the cause for appellant (Hartman & Winnicki, PC and Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Daniel L. Schmutter and Jack Fersko, of counsel and on the briefs; Irene Hsieh, on the briefs).

John M. Scagnelli argued the cause for respondent R&K Associates, LLC (Scarinci & Hollenbeck, LLC, attorneys; John M. Scagnelli, of counsel and on the brief; William A. Baker, on the brief).

Richard F. Engel, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Bethanne Sonne Prugh, Deputy Attorney General, on the brief).

PER CURIAM

This case has been before our court on three previous occasions. In each instance, we reversed a final agency decision of the New Jersey Department of Environmental Protection ("DEP") either granting or denying Des Champs Laboratories, Inc. ("Des Champs") what is known as a de minimis quantity exemption ("DQE") under the Industrial Site Recovery Act ("ISRA"), N.J.S.A. 13:1K-9.7, and the associated ISRA regulations, N.J.A.C. 7:26B-5.9 to -8.1.

Des Champs presently appeals the October 28, 2018 final agency decision of DEP Commissioner Catherine McCabe denying it a DQE, after the completion of the most recent remand directed by our court. Adopting the post-

remand findings of an Administrative Law Judge ("ALJ"), the Commissioner concluded that Des Champs failed to prove by a preponderance of the evidence at the administrative hearings that it meets the criteria for a DQE. For the reasons that follow, we affirm.

## I.

We incorporate by reference and assume the reader's familiarity with the facts and procedural history reached in our three previous opinions. We summarize that lengthy background as follows.

From 1982 to 1996 Des Champs occupied an industrial facility on Okner Parkway in Livingston where it assembled heat recovery ventilators. In early 1990, Des Champs moved a majority of its manufacturing operations to a new facility in Virginia, but several employees remained at the Okner site. In 1996 Des Champs decided to cease its operations at Okner altogether. Before terminating its operations on the site, Des Champs submitted to the DEP a preliminary assessment report, in which the company's owner certified that the only hazardous substances it used at the site were five gallons of gasoline and several tanks of propane gas.

In January 1997, Des Champs submitted to the DEP what is known as a "negative declaration" certifying that there had been no discharge of hazardous

A-1475-18T1

substances from the property. Based on that information, the DEP issued a no further action ("NFA") letter in January 1997 authorizing Des Champs to cease operations at the Okner location.

In September 1997, R&K Associates, LLC ("R&K") bought the property from Des Champs. R&K remains the property's current owner.

In 2005, the DEP began to investigate groundwater contamination in the Township of Livingston. The contamination was traced to the Okner property formerly occupied by Des Champs. As a result, in November 2008, the DEP rescinded its January 1997 NFA letter and directed Des Champs to investigate the groundwater contamination and submit a site investigation report in compliance with the ISRA.[1]

In January 2009, Des Champs applied for a DQE pursuant to N.J.S.A. 13:1K-9.7, seeking an exemption from the strict liability remediation requirements of ISRA. To support that application, Des Champs's owner submitted an affidavit contending that the Okner site had, at maximum, only the following: five gallons of gasoline, ten gallons of hydraulic oil, five gallons of

_____

[1] According to the DEP's counsel at oral argument on the appeal, the site investigation has yet to be completed.

motor oil, fifteen spray cans of paint, three cartridges of copy machine toner, and ten gallons of oil-based paints.

On January 21, 2011, the DEP denied Des Champs' DQE application because the company had failed to certify that the property was free of contamination. The first appeal ensued.

In our published decision, Des Champs Labs. Inc., v. Martin, 427 N.J. Super. 84 (App. Div. 2012), we vacated the DEP's denial of a DQE to Des Champs. We did so because we found that ISRA did not authorize the DEP to require a DQE applicant to certify that the property is free of contamination. We remanded the matter for further consideration by the DEP, this time without regard to the improper condition.

On remand in August 2012, the DEP granted Des Champs the DQE. This time, R&K, which opposed Des Champs' receipt of a DQE, appealed.

On May 16, 2013, in the second appeal, we reversed the grant of the DQE because R&K had not been provided with a chance to participate in the remand proceedings. R&K Assocs., LLC v. N.J. Dep't of Envtl. Prot., No. A-0413-12 (App. Div. May 16, 2013) ("Des Champs II").

By this point the DEP determined that the contested factual issues should be heard before an ALJ. Consequently, an ALJ held a three-day Office of

5

Administrative Law ("OAL") hearing in June and August 2014, at which seven witnesses testified. Because of the long passage of time, the witnesses had difficulty recalling the operative facts from eighteen years earlier. The ALJ recognized this impediment in her initial decision, finding that "99% of the testimony was not based on present day recollection of past events but rather was based on each witness' genuine belief that he would have most likely done x, y or z back then, or it was recollection refreshed through historic documents."

Following the administrative hearings, the ALJ recommended the denial of the DQE. The ALJ determined that, as a matter of law, a DQE cannot be obtained by a former owner of the property such as Des Champs. However, the ALJ did note in her decision that, had this apparent legal requirement not existed, she would have recommended issuance of the DQE because she found that R&K had the burden of proof in the matter and had not sustained that burden.[2]

DEP Commissioner Bob Martin adopted the ALJ's determination, with certain modifications, in a decision dated April 6, 2015. Among other things,

---

[2] The ALJ's initial decision did contain a caveat with a factual finding that Des Champs had provided its consultant with "selective information" about its activities on site. The ALJ identified this non-disclosure as an "alternative basis" for denying Des Champs a DQE. We discus that caveat, infra, in Part II.

in the course of his decision Commissioner Martin criticized Des Champs for not retaining necessary records that would help substantiate what activities actually had occurred at the site.

The third appeal then ensued, in which Des Champs successfully argued to this court that a former owner of a property such as itself can be eligible to obtain a DQE. R&K Assocs., LLC v. N.J. Dep't of Envtl. Prot., A-4177-14 (App. Div. Apr. 10, 2017) ("Des Champs III"). Nonetheless, we found in our opinion that the burden of proof properly should not rest on the objector (here, R&K) but rather should rest on the applicant (here, Des Champs), by a preponderance of the evidence. Id., slip op. at 22.

Based on these determinations, we remanded the case yet another time back to the DEP. In our unpublished opinion, we provided very detailed instructions to the DEP and the ALJ, explaining:

> Improvidently shifting the burden at the hearing to R&K, the ALJ concluded from the rather scant and stale proofs tendered by Des Champs' witnesses that the evidence was sufficient to justify the issuance of a DQE, but for the legal impediments we have already discussed. We do not know from the ALJ's decision whether, if the burden had appropriately remained with Des Champs, she would have reached the same conclusions about the strength of the record.
>
> In light of this fundamental error of burden allocation, we are constrained to remand the matter so

that the ALJ now can consider the proofs in a manner that appropriately requires Des Champs to show its entitlement to a DQE by a preponderance of the evidence. We accordingly remand the matter to the DEP to make such a referral to the ALJ. The ALJ shall have the discretion to reopen the record as she may see fit in order to address more fully the pertinent issues. Counsel promptly shall provide courtesy copies of their appellate briefs and appendices to assist her in that endeavor. Following the remand, any aggrieved party(ies) may seek further review by the Commissioner, and, beyond that, through an appeal in this court.

[Des Champs III, slip op. at 23].

The matter was then remanded back again to the ALJ. All parties stipulated that the existing administrative record developed from 2014 did not need to be further amplified.

Based on that record, the ALJ reconsidered her previous determination, and found that the evidence did not justify Des Champs receiving a DQE. The ALJ noted there were numerous discrepancies in Des Champs' various submissions to the DEP, that Des Champs failed to identify in its application at least two of the operations at the Okner facility, and that there was a troublesome lack of documentation regarding the company's actual usage of hazardous substances. As the ALJ summarized it:

I must CONCLUDE that Des Champs has failed to prove that it is factually entitled to a DQE on the

Property because records have been lost; the agency has been handicapped in its review role; and there are simply too many open-ended questions about the operations' use of hazardous materials during its heyday.

Commissioner McCabe adopted the ALJ's decision in a final agency decision in October 2018. The present appeal by De Champs, which is opposed by both the DEP and R&K, ensued.

Des Champs contends that the ALJ should have adhered to her original assessment of the record and found the company is entitled to a DQE. Des Champs argues that the DEP and R&K have mischaracterized the record and that Des Champs did not mislead the Department concerning its actual on-site activities. The company maintains the record shows that it only used de minimis quantities of hazardous substances at the site and is therefore entitled to a DQE.

Des Champs also contends the ALJ was obligated to adhere to her factual and credibility findings from her 2014 decision, and that she arbitrarily reconsidered her original assessment of the record without justification.

## II.

Our scope of appellate review of Commissioner's McCabe's October 28, 2018 final administrative agency decision is limited. As the Supreme Court has instructed:

> The appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence.
>
> [In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008)].

Des Champs has failed to demonstrate on the present appeal any of these three limited exceptions to overcome the general policy of judicial deference to the administrative agency's expertise. The Commissioner's decision: (1) followed the law; (2) is not demonstrably arbitrary, capricious or unreasonable; and (3) is adequately supported by substantial evidence in the administrative record.

We acknowledge that this court overturned three previous administrative decisions of the DEP in this litigation. In each of those instances, however, the agency had made an unfortunate legal or procedural error. Those errors included misinterpreting the pertinent statute to require the property to be free of contamination; denying R&K its legal right as property owner to participate in the case as an intervenor; and in misconstruing the law to disallow a former property owner to receive a DQE. Notably for the present appeal, in Des Champs III we also corrected the agency's misapprehension about the legally appropriate allocation of the burden of proof. All of those legal issues were

A-1475-18T1

suitable for this court's de novo review and intervention. Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Public Safety, 64 N.J. 85, 93 (1973) (noting that appellate courts are not bound by an administrative agency's disposition of a legal issue).

The present appeal is markedly different from the three previous ones because it does not hinge upon a legal issue but instead concerns the strength of the factual evidence in the record. On remand, the ALJ duly reconsidered her original decision, and concluded that Des Champs had "failed to prove it is factually entitled to a DQE." The DEP Commissioner upheld that factual determination, and so do we.

Des Champs contends, in essence, that the ALJ was stuck with findings she made in her 2014 original decision, and that this court's remand did not permit her to change her mind after reflecting further upon the proofs. This argument misreads our 2017 remand too narrowly and rigidly, and also misconceives the decisional authority of a judicial officer such as an ALJ.

As the Supreme Court reaffirmed in Lombardi v. Masso, 207 N.J. 517 (2011), it is "well established" that a jurist "'has the inherent power to exercise in [his or her] sound discretion, to review, revise, reconsider and modify . . . interlocutory orders at any time prior to the entry of final judgment.'" Id. at 534

11

(quoting Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987)) (emphasis added). This power of a judge to reconsider is "rooted in the common law." Ibid. It is a long-recognized power to grant relief from error which can be "'exercised in justice and good conscience.'" Id. at 535 (quoting United States v. Jerry, 487 F.2d 600, 604 (3rd Cir. 1973)). Administrative tribunals likewise have such "an inherent power, parallel to that of the courts, to reopen [their] own judgments on equitable grounds in the interests of justice." Lee v. W.S. Steel Warehousing, 205 N.J. Super. 153, 156 (App. Div. 1985).

As the result of our 2017 opinion vacating the final agency decision on discrete grounds not at issue here, this administrative case, once again, became non-final. We made quite clear in our opinion that the ALJ should take a fresh look at the case, this time placing the burden of persuasion upon Des Champs, and decide whether "she would have reached the same conclusions about the strength of the record." Des Champs III, slip op. at 23. The ALJ was explicitly authorized to weigh the evidence anew. The ALJ did so, this time viewing the case through a different prism of burden allocation, and she reached a different outcome. It was not arbitrary or capricious for her to do so.

Des Champs portrays the ALJ's original 2014 decision as if it had consistently credited the evidence as being in Des Champs' favor. That is not

so. Indeed, the ALJ in her original decision several times expressed misgivings and concerns about the relative paucity of evidence and about information that Des Champs omitted concerning its operations.

Several paragraphs of the 2014 decision focused upon these informational shortcomings, with respect to what had not been conveyed to Des Champs' environmental consultant Joseph Pilewski concerning the company's so-called "paint spray booth" activities and the company's use of a fireproof storage cabinet. The ALJ also highlighted testimony from Livingston Township Fire Department witnesses, who described safety concerns regarding the spray booth and other aspects of the site.

Significantly, in footnote 8 of her 2014 decision, the ALJ made these adverse factual findings concerning Des Champs' conduct in providing "selective information" to its consultant about its on-site operations:

> Separate and apart from the equitable argument on waiver of the DQE option, I would CONCLUDE that the testimony of Des Champs' environmental consultant is persuasive on the factual point that the company more likely than not was not eligible for a DQE exemption initially, and thus an NFA was sought. There is no reason to doubt the testimony of Pilewski that the normal decision-tree is to first explore ISRA exemptions. To the extent that Pilewski was not aware of potential areas of concerns such as the spray paint booth or hazardous storage cabinet, I must CONCLUDE that same was the result of selective

13

information produced by Des Champs, the party who was the only one that could have provided information not obvious to any third-party observer. Because of the legal conclusion reached below, I need not rely upon these conclusions to reach my Initial Decision, but they are set forth herein as alternative bases for my ruling.

Although this finding is not completely dispositive of the issues, the ALJ saw fit to reiterate them in full in her post-remand 2018 decision. As the ALJ explained, her original concerns about "the failure of Des Champs to fully inform Pilewski of its past manufacturing operations and use of potentially hazardous materials" are failings that "fall at its [Des Champs'] feet," now that it bears the burden of proof. The ALJ's explanation is eminently reasonable.

Moreover, Des Champs had an opportunity to attempt to expand the record and strengthen its proofs on remand. It elected – perhaps for strategic reasons – not to do so. Accordingly, Des Champs bears responsibility for its lack of success in surmounting the preponderance standard of proof.

Des Champs further argues that the ALJ was irrevocably bound in 2018 by her 2014 determination that Des Camps' witnesses were credible. It is readily apparent from an objective reading of the ALJ's 2018 decision that she reconsidered her original pronouncement in this regard, and, on further reflection, implicitly found certain aspects of that testimony to be insufficiently credible to satisfy Des Champs' reallocated burden of proof. To be sure, it would

14

have been preferable if the ALJ had been more explicit and detailed about findings from her 2014 decision that she was now reconsidering. But the gist of the ALJ's ultimate assessment of the evidence is clear and transparent.

Finally, it bears noting that the ALJ did not stray from her original "bottom line." The ALJ concluded in 2014 that Des Champs should be denied a DQE. She reached the same conclusion in 2018, albeit based upon different grounds.

Commissioner McCabe's final agency decision is consequently affirmed. The matter is now concluded.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION