**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2980-23

JOHN DOE,

    Plaintiff-Respondent,

v.

ELIZABETH BOARD OF
EDUCATION,

    Defendant-Respondent,

and

CITY OF ELIZABETH,
ELIZABETH POLICE
DEPARTMENT, and
RONALD GAMBA,

    Defendants/Third-Party
    Plaintiffs-Appellants,

and

ROBERT GOODLIN,

    Defendant,

v.

ROBERT GOODLIN, ST.
VLADIMIR UKRAINIAN
CATHOLIC CHURCH,
MOUNT OLIVET CEMETERY,
THE ROMAN CATHOLIC
ARCHDIOCESES OF NEWARK,
WEEQUAHIC PARK, ESSEX
COUNTY, THE CITY OF NEWARK,
KELLOGG PARK, THE CITY OF
ELIZABETH, CONANT PARK,
UNION COUNTY, THE MILLS
AT JERSEY GARDENS, and
GLIMCHER REALTY TRUST,

     Third-Party Defendants.

_____

Argued January 23, 2025 – Decided August 29, 2025

Before Judges Mayer and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0077-18.

Lori D. Reynolds argued the cause for appellants (Antonelli Kantor Rivera, attorneys; Daniel Antonelli and Lori D. Reynolds, of counsel and on the briefs; Kathleen P. Ramalho, on the briefs).

Brian S. Schiller (Law Office of Brian S. Schiller, LLC) argued the cause for respondent John Doe.

Jessica M. Anderson argued the cause for respondent Elizabeth Board of Education (Anderson Law Office, LLC; attorneys; Jessica M. Anderson, on the brief).

PER CURIAM

On leave granted, defendants City of Elizabeth (City) and Ronald Gamba (collectively, the Police Defendants) appeal from the Law Division's March 26, 2024 order granting plaintiff John Doe's motion for reconsideration of a January 10, 2024 order granting them summary judgment on plaintiff's claims arising from sexual abuse by his middle school teacher. We reverse.

I.

We derive the following facts, viewed in the light most favorable to plaintiff, from the summary judgment record. Defendant Robert Goodlin was employed by defendant Elizabeth Board of Education (BOE) as a teacher and assistant soccer coach at Battin Middle School (Battin) from 1993 to 2004.

In 1996, the Elizabeth Police Department (EPD) received anonymous information that an unidentified adult male was associating with male Battin students after school hours. The information included a description of the man's vehicle, but no suggestion the man was a pedophile or sexually abusing students.[1]

---

[1] Discovery revealed that separately a Battin student told an EPD officer, on more than one occasion, there were rumors at the school Goodlin was sexually assaulting male students. The student told the officer Goodlin offered to drive him home from school, buy him video games, and bring him to Goodlin's lake cabin. However, the student did not report any sexual assault.

In response to receiving that information, EPD assigned Gamba, a detective in the Juvenile Unit trained in detecting child sexual abuse, to investigate. He established surveillance outside Battin, spotted the reported vehicle parked at the school, and determined it was registered to Goodlin.

Over the next three to four months, Gamba observed Goodlin interact with male students of middle- or high-school age outside of school hours several times. On three or four occasions, several boys approached Goodlin's parked vehicle after school and waited for him to arrive. After brief exchanges with the boys, Goodlin got into his vehicle and drove away alone.

On one occasion, Gamba saw boys get into Goodlin's vehicle after school and Goodlin drive away with them. Gamba followed Goodlin's vehicle to a cemetery in Elizabeth. Although he did not enter the cemetery, Gamba observed Goodlin drive around the cemetery for about five minutes. Gamba then saw Goodlin change seats with one of the boys, whom he let drive the vehicle. Goodlin later resumed driving and left the cemetery. Gamba followed Goodlin to a nearby residential area, where the boys exited Goodlin's vehicle. Gamba continued to follow Goodlin for a short while before ending surveillance.

On another occasion, Gamba again saw several boys get into Goodlin's vehicle after school and Goodlin drive away with them. Gamba followed

4

Goodlin's vehicle out of Elizabeth southbound on Route 1. When they reached Edison, Gamba stopped surveillance because he observed the boys acting as though they had identified him as a police officer.

Gamba testified his observations of Goodlin with the boys "made the hair on [his] neck stand up." However, Gamba closed the investigation without writing a report, identifying the boys he saw with Goodlin, or notifying the Division of Youth and Family Services (DYFS),[2] the BOE, or Battin personnel of his observations. According to the Police Defendants, Gamba did not witness criminal activity or any acts causing him to suspect Goodlin was sexually abusing the boys.

Plaintiff, who was born in 1989, was a student at Battin from September 2000 to June 2003. Goodlin began grooming plaintiff in 2002, when plaintiff was in eighth grade. Although not plaintiff's teacher, Goodlin would routinely give him hall passes to come to Goodlin's classroom "to hang out" while classes were in session. Goodlin later began regularly driving plaintiff home from school, at times allowing him to drive Goodlin's vehicle, purchasing cigarettes for plaintiff, and giving him gifts. Ultimately, Goodlin sexually assaulted

---

[2] As of June 29, 2012, DFYS was renamed the Division of Child Protection and Permanency. See L. 2012, c. 16.

A-2980-23

plaintiff approximately twenty times at various locations, including Battin, parks, cemeteries, and plaintiff's home, all of which were in Elizabeth. Goodlin threatened plaintiff to maintain his silence. Goodlin's sexual abuse of plaintiff ended in 2004.

In August 2003, a high school student's mother contacted Battin and expressed her concern Goodlin had ongoing contact with her son. In addition, she reported a conversation she overheard in which Goodlin said he was interested in sexual activity with boys. Battin provided this information to DYFS and the Union County Prosecutor's Office. DYFS declined to investigate because the boy and Goodlin were no longer in an institutional setting together. DYFS referred the matter to the EPD. EPD, in turn, declined to investigate in the absence of a direct report to them from the student's mother. Goodlin was cleared to return to Battin on the first day of school in September 2003.

In February 2004, a Battin teacher observed two students with Goodlin in his vehicle in a church parking lot after school hours. This information was transmitted to DYFS, which did not investigate because there was no evidence of unlawful activity. DYFS advised any violation of school policy by Goodlin should be addressed by the school district. Battin's principal subsequently met

6

A-2980-23

with Goodlin and advised him not to have contact with students after school hours.

In 2019, Goodlin pleaded guilty to two counts of second-degree sexual assault, N.J.S.A. 2C:14-2. He admitted to sexually assaulting plaintiff and another Battin student. Goodlin was sentenced to prison.

On November 2, 2020, plaintiff filed an amended complaint against the BOE, the Police Defendants, and Goodlin. Plaintiff alleged: (1) Gamba was negligent and/or grossly negligent and violated his duty to protect children from Goodlin by failing to conduct a thorough investigation in 1996 and report what he observed to the appropriate authorities, including DYFS and Battin. Plaintiff alleged Goodlin's negligence and breach of duty were the proximate cause of his damages because a reasonably prudent person would have foreseen that, absent intervention, Goodlin would continue to groom and sexually abuse male students at Battin; (2) the City was vicariously liable for Gamba's negligence and/or gross negligence, and violation of duty; and (3) the City negligently supervised and failed to train Gamba.[3]

---

[3] A lengthy procedural history, including the BOE's filing of a third-party complaint against several defendants, preceded the filing of the amended complaint. We need not detail that history, as it is not relevant to the limited issues before the court.

The Police Defendants subsequently moved for summary judgment. They argued: (1) N.J.S.A. 59:2-1.3(a), a provision of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, on which plaintiff relied, did not create a cause of action against the Police Defendants and disable their TCA immunities because Goodlin was not an employee of the City and neither the City nor Gamba acted in a supervisory capacity regarding Goodlin; (2) if N.J.S.A. 59:2-1.3(a) created a cause of action against them, plaintiff could not establish they acted in a willful, wanton, or grossly negligent manner, they had no duty to plaintiff, Gamba's acts were not the proximate cause of the sexual assaults, and Goodlin's sexual assaults of plaintiff were an unforeseeable intervening criminal act; and (3) if N.J.S.A. 59:2-1.3(a) did not create a cause of action against them they are immune from plaintiff's claims pursuant to N.J.S.A. 59:5-5, :3-5, :2-4; :3-3; and :5-4.

Plaintiff and the BOE opposed the motion. They argued: (1) N.J.S.A. 59:2-1.3(a) applied to the Police Defendants and disabled their TCA immunities; and (2) plaintiff raised a genuine issue of material fact with respect to whether the Police Defendants engaged in willful, wanton, or grossly negligent conduct that was the proximate cause of his injuries.

8

On January 10, 2024, the motion court issued a written decision granting the motion. The court found Goodlin's sexual assault of plaintiff did not form the basis of his claims against the Police Defendants and did not, therefore, constitute a cause of action under N.J.S.A. 59:2-1.3(a) or disable their TCA immunities. The court reasoned:

> Gamba never witnessed any conduct he would consider illegal or child abuse. Having not witnessed any such act, the cause of action against . . . Gamba and [the] City . . . is tantamount to a failure to properly follow police protocol when documenting and performing an investigation. The basis of the cause of action is not [p]laintiff's sexual assault because there is no claim . . . Gamba acted in a willfully, wantonly, or grossly negligent manner with respect to his perceived observations when investigating . . . Goodlin. Had . . . Gamba witnessed any actionable activity on the part of . . . Goodlin, [p]laintiff's claim may be properly construed to fall under N.J.S.A. 59:2-1.3.

In addition, the court found if N.J.S.A. 59:2-1.3(a) applied to plaintiff's claims, summary judgment was warranted because plaintiff could not establish a breach of duty by Gamba or that Gamba's actions were the proximate cause of Goodlin's sexual assaults of plaintiff. The court found plaintiff raised no genuine issue of material fact with respect to whether Gamba observed any act by Goodlin he should have considered criminal or suggestive of child sexual abuse. Thus, the court found, plaintiff could not establish Gamba had a duty to

9

continue his investigation, protect the welfare of children, or report his observations to DYFS or any other entity. In addition, the court found Gamba's 1996 investigation and the start of Goodlin's sexual abuse of plaintiff in 2002 were too attenuated to establish proximate cause.

Finally, the court determined after Gamba ended his investigation, Battin received reports of Goodlin having contact with boys outside of school hours. Yet, no action was taken to remove Goodlin from his position and DYFS declined to investigate in the absence of evidence of child abuse. Thus, the court concluded no reasonable jury could find a disclosure of similar information by Gamba would have resulted in Goodlin's dismissal from Battin before plaintiff attended the school. A January 10, 2024 order memorialized the court's decision and dismissed all claims in the amended complaint against the Police Defendants.[4]

Plaintiff and the BOE moved for reconsideration of the January 10, 2024 order. They argued the court overlooked relevant facts, did not consider the record in a light most favorable to plaintiff, and erred in its analysis of the duties Gamba owed to plaintiff. The Police Defendants opposed the motion.

---

[4] The order is dated January 10, 2023, which appears to be a typographical error.

On March 26, 2024, the court issued a written decision granting the motion and vacating the January 10, 2024 order. The court found it failed to view the motion record in a light most favorable to plaintiff when deciding the Police Defendants' motion. The court concluded that, under a more favorable view of the evidence, plaintiff's claims against the Police Defendants were based on Goodlin's sexual assaults of plaintiff. Consequently, the court found plaintiff's claims arose under N.J.S.A. 59:2-1.3(a), which disabled the Police Defendants' TCA immunities. The court concluded a reasonable jury could find Gamba's observations during his surveillance of Goodlin were sufficient to raise a suspicion of child sexual abuse, which Gamba had a duty to further investigate or report to DYFS and Battin personnel. The court noted Gamba's obligation under N.J.S.A. 9:6-8.10 to report to DYFS a "reasonable cause to believe that a child has been subjected to child abuse." Thus, the court concluded a reasonable jury could find Gamba engaged in willful, wanton, or grossly negligent conduct under N.J.S.A. 59:2-1.3(a).[5]

---

[5] Although the motion court did not address the City's potential liability, if a reasonable jury could find Gamba engaged in willful, wanton, or grossly negligent conduct, then a reasonable jury could also find the City was vicariously liable for Gamba's acts, which took place in the course of his employment and under authority granted to him by the City. See Tice v. Cramer, 133 N.J. 347, 355 (1993). The motion court did not address plaintiff's claim the

A-2980-23

With respect to proximate cause, the court found that when the evidence is viewed in the light most favorable to plaintiff, a reasonable jury could find Gamba observed conduct that was either criminal or indicative of child abuse. Thus, the court concluded a reasonable jury could find Gamba's failure to continue his investigation or report his observations to DYFS and Battin officials were the proximate cause of Goodlin's sexual assaults of plaintiff.

The court reconsidered its prior conclusion that the six-year gap between the end of Gamba's investigation and the start of Goodlin's sexual abuse of plaintiff was too attenuated for a reasonable jury to find Gamba's conduct was the proximate cause of plaintiff's injuries. The court reasoned:

> [B]ased on . . . Gamba's observations, it can be found that it was reasonably foreseeable . . . Goodlin would continue to sexually abuse students at the school . . . . This is because it is reasonably foreseeable that the failure to report a suspected pedophile would result in future students being sexually molested. The single fact that [p]laintiff's sexual assault first occurred six years after . . . Gamba's investigation is not a basis on which the [c]ourt should grant summary judgment on the issue of proximate cause. This is an issue that should be presented to the fact finder because the six-year time gap alone is insufficient to find that reasonable minds could not differ on the issue of proximate cause.

City was liable for the negligent retention, supervision, or training of Gamba. See N.J.S.A. 59:2-1.3(a)(2).

The court found it "cannot determine what would have been done had . . . Gamba performed his investigation properly or reported his observations and said conclusion should be left to the provenance of the fact finder."

A March 26, 2024 order memorialized the court's decision and vacated the January 10, 2024 order. We subsequently granted the Police Defendants' motion for leave to appeal.

The Police Defendants argue: (1) N.J.S.A. 59:2-1.3(a) does not apply to the claims against them because Goodlin was not an EPD employee and the EPD and Gamba lacked supervisory control over Goodlin; (2) because N.J.S.A. 59:2-1.3(a) does not disable their TCA immunities, plaintiff's claims are barred under several immunity provisions of the TCA; (3) if N.J.S.A. 59:2-1.3(a) applies to plaintiff's claims, no reasonable jury could find Gamba engaged in willful, wanton, or grossly negligent conduct; (4) if N.J.S.A. 59:2-1.3(a) applies to plaintiff's claims, no reasonable jury could find Gamba's conduct was the proximate cause of Goodlin's sexual assaults of plaintiff; and (5) plaintiff cannot establish the Police Defendants owed him a duty to continue Gamba's investigation of Goodlin, protect children from Goodlin, or report Gamba's observations to DYFS.

## II.

We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation'

and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

The January 10, 2024 order, the subject of plaintiff's motion for reconsideration, was interlocutory. As the Supreme Court explained, "[b]y definition, an order that 'does not finally determine a cause of action but only decides some intervening matter pertaining to the cause[,] and which requires further steps . . . to enable the court to adjudicate the cause on the merits[,]' is interlocutory." Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005) (quoting Black's Law Dictionary 815 (6th ed. 1990)); see also Wein v. Morris, 194 N.J. 364, 377-80 (2008).

A court "has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987). As Judge Pressler explained, "the strict and exacting standards of R. 4:50" do "not apply to interlocutory orders entered prior to final disposition." Ibid. Nor do the limitations of Rule 4:49-2 apply to requests for relief from interlocutory orders. Sullivan v. Coverings &

15

Installation, Inc., 403 N.J. Super. 86, 96-97 (App. Div. 2008); see also Del Vecchio v. Hemberger, 388 N.J. Super. 179, 188-89 (App. Div. 2006); Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996); D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). We review a decision on a motion for reconsideration of an interlocutory order for an abuse of discretion. Johnson, 220 N.J. Super. at 263-64.

We have reviewed the record and conclude the motion court mistakenly exercised its discretion when it granted plaintiff's motion for reconsideration and vacated the January 10, 2024 order. Initially, the motion court correctly decided no reasonable jury could find Gamba engaged in willful, wanton, or grossly negligent conduct or that his acts were the proximate cause of Goodlin's sexual assaults of plaintiff. As a result, the Police Defendants were entitled to entry of summary judgment in their favor regardless of whether N.J.S.A. 59:2-1.3(a) applied to plaintiff's claims.

The TCA was enacted in 1972 in response to the Court's abrogation of the State's sovereign immunity to tort claims in Willis v. Department of Conservation and Economic Development, 55 N.J. 534 (1970). The TCA reestablished "sovereign immunity in a manner consistent with the proposals contained in the 1972 Attorney General's Task Force Report on Sovereign

Immunity." Velez v. City of Jersey City, 180 N.J. 284, 289 (2004). N.J.S.A. 59:1-2 declares it to be

> the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carry out the above legislative declaration.

The essential structure of the statute and its analytic approach to public entity liability and immunity is set out in N.J.S.A. 59:2-1:

> a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
> b. Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.

Thus, in analyzing a tort claim against a public entity, the first task is to locate the predicate for liability in the TCA. Troth v. State, 117 N.J. 258, 277 (1989) (O'Hern, J., concurring). If there is no predicate for liability, the inquiry ends.

If there is a statutory predicate for liability under the TCA, N.J.S.A. 59:2-1(b) provides it will be subject to any immunity the public entity has under the statute, and otherwise, and to any defense available to a private person. "Even when one of the [TCA's] provisions establishes liability, that liability is

17

A-2980-23

ordinarily negated if the public entity possesses a corresponding immunity."

Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 408 (1988).

The rule is the opposite for public employees.  N.J.S.A. 59:3-1 provides:

> a.  Except as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person.
>
> b.  The liability of a public employee established by this act is subject to any immunity of a public employee provided by law and is subject to any defenses that would be available to the public employee if he were a private person.
>
> c.  A public employee is not liable for an injury where a public entity is immune from liability for that injury.

"The Legislature, in providing for the liability of public employees under the [TCA], determined to preserve their common law liability."  Chatman v. Hall, 128 N.J. 394, 403-04 (1992).  "In doing so the [TCA] reaffirms the common law principle that with respect to private persons immunity is the exception rather than the rule."  Id. at 404.

Here, plaintiff relies on N.J.S.A. 59:2-1.3(a), enacted in 2019 to expand public-entity and public-employee liability for claims arising from sexual abuse by disabling immunities otherwise provided in the TCA.  The statute provides:

> a.  Notwithstanding any provision of the [TCA] to the contrary:

A-2980-23

(1) immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault . . . being committed against a person, which was caused by a willful, wanton or grossly negligent act of the public entity or public employee; and

(2) immunity from civil liability granted by that act to a public entity shall not apply to an action at law for damages as a result of a sexual assault . . . being committed against a minor under the age of [eighteen], which was caused by the negligent hiring, supervision or retention of any public employee.

[N.J.S.A. 59:2-1.3(a).]

As we recently explained,

N.J.S.A. 59:2-1.3(a) was one part of a group of laws enacted to expand the rights of victims of sexual assaults . . . . Along with this amendment to the [TCA], the Legislature provided a significantly greater time period in which a minor victim of sexual misconduct may commence a civil action. See N.J.S.A. 2A;14-2(a); N.J.S.A. 2A:30B-6; N.J.S.A. 2A:61B-1. In addressing the fact that victims might also encounter sexual misconduct involving public entities and public employees, the Legislature disabled [TCA] immunities in circumstances defined by N.J.S.A. 59:2-1.3(a) and eliminated the procedural notice-of-claim requirements in cases like this. See N.J.S.A. 59:8-3(b).

[E.C. by D.C. v. Inglima-Donaldson, 470 N.J. Super. 41, 46-47 (App. Div. 2021).]

In E.C., we interpreted the statute to "impose[] an obligation on a plaintiff to show the 'willful, wanton or grossly negligent' conduct of only the public entity

19

'or' public employee, but not both" to trigger the abrogation of immunities. Id. at 53.

The Police Defendants argue plaintiff's claims do not fall within the scope of N.J.S.A. 59:2-1.3(a) because Goodlin was not employed by the City and the Police Defendants and had no supervisory control over him. We rejected this interpretation of N.J.S.A. 59:2-1.3(a) in dicta in E.C. Id. at 49-51. Because we conclude plaintiff cannot establish a claim under N.J.S.A. 59:2-1.3(a) on other grounds, we need not decide whether to follow the dicta in E.C. here. However, we proceed with our analysis of plaintiff's claims assuming N.J.S.A. 59:2-1.3(a) applies to any public employee or public entity whose willful, wanton, or grossly negligent conduct is found to be the proximate cause of a sexual assault, regardless of whether the sexual offender is employed by the public entity or is a public employee.

Our review of the record leads us to the conclusion no reasonable jury could find Gamba's conduct was willful, wanton, or grossly negligent. Gross negligence is more than inattention or mistaken judgment. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 364 (2016). To establish a claim of willful or wanton conduct, a plaintiff must demonstrate a defendant acted or failed to act with knowledge that an injury would likely or probably result and with reckless

indifference to that consequence.  Foldi v. Jeffries, 93 N.J. 533, 549 (1983). This implies an intentional deviation from a clear duty.  Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 38 (App. Div. 2021).

The record establishes Gamba, acting on an anonymous tip a man was interacting with minor male students after school hours, conducted surveillance of Goodlin for three or four months.  During that time, Gamba did not observe Goodlin engage in any criminal act.  Nor did Gamba observe conduct indicative of sexual abuse of minors.  At best, Gamba saw Goodlin violate school policy. While Gamba was concerned about his observations, he did not have a basis for filing criminal charges, decided a continuation of the criminal investigation was not warranted, and did not report his findings to DYFS or Battin personnel.

In hindsight, Gamba's decision to terminate the investigation and not report his observations could be viewed as a mistaken exercise of judgment and inattention to the significance of Goodlin's acts.  No reasonable jury, however, could find Gamba knew his decisions would likely or probably result in Goodlin's sexual assault of plaintiff six years later and was recklessly indifferent to that consequence.

In addition, we agree with the motion court's initial conclusion no reasonable jury could find Gamba's actions were the proximate cause of

A-2980-23

Goodlin's sexual assaults of plaintiff. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 577 (1999) (quoting Powers v. Standard Oil Co., 98 N.J.L. 730, 732 (Sup. Ct. 1923)). "[T]o be a proximate cause . . . conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." Showalter v. Barilari, Inc., 312 N.J. Super. 494, 503 (App. Div. 1998) (alterations in original) (quoting Yun v. Ford Motor Co., 276 N.J. Super. 142, 159 (App. Div. 1994) (Baime, J.A.D., concurring and dissenting)).

"A superseding or intervening act is one that breaks the 'chain of causation' linking a defendant's wrongful act and an injury or harm suffered by a plaintiff." Komlodi v. Picciano, 217 N.J. 387, 418 (2014) (quoting Cowan v. Doering, 111 N.J. 451, 465 (1988)). Superseding or intervening acts that "are 'foreseeable' or the 'normal incidents of the risk created' will not break the chain of causation and relieve a defendant of liability." Ibid.

22

Generally, "the determination of proximate cause is an issue of fact for the" factfinder. Cruz-Mendez v. ISU/Ins. Sevs. of S.F., 156 N.J. 556, 576 (1999); see also Komlodi v. Picciano, 217 N.J. 387, 419 (2014); Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 88 (App. Div. 2002). However, a court may decide the question of proximate cause where no reasonable jury could find the acts of a defendant proximately caused the plaintiff's injuries. Broach-Butts v. Therapeutic Alts., Inc., 456 N.J. Super. 25, 40 (App. Div. 2018).

Plaintiff argues if Gamba had conducted a more thorough or lengthier investigation, he would have uncovered evidence of Goodlin's sexual abuse of children, leading to his removal as a teacher at Battin before plaintiff attended the school. This argument is speculative, given that Gamba observed no criminal act or conduct by Goodlin indicative of sexual abuse of children during three or four months of consistent surveillance.

In addition, plaintiff argues if Gamba had reported his observations to Battin or DYFS, those entities would have removed Goodlin from his teaching position before plaintiff attended the school. Yet, as noted above, Gamba at best observed only violations of school policy. The record contains evidence Battin and DYFS would not have removed Goodlin from his teaching position based on the acts observed by Gamba. In August 2003 and February 2004, both Battin

and DYFS received reports Gamba engaged in conduct similar too, and arguably worse than, the conduct observed by Gamba. One report included an allegation Gamba told a former student he was interested in sexual activity with minors. Yet, neither Battin nor DYFS removed Goodlin from his teaching position. In both instances, those entities determined the reported conduct was insufficient to warrant further investigation or remedial action, other than counseling regarding contact with students outside of school hours.

Because no reasonable jury could find either willful, wanton, or grossly negligent conduct by Gamba or that his acts were the proximate cause of plaintiff's injuries, plaintiff cannot establish the Police Defendants' TCA immunities were disabled under N.J.S.A. 59:2-1.3(a). In addition, given our conclusion with respect to proximate cause, plaintiff cannot establish liability on the part of the Police Defendants on his claims under any other liability provision of the TCA. We need not, therefore, decide whether the Police Defendants would be immune from liability for plaintiff's damages under any of the immunity provisions of the TCA or common law.

The March 26, 2024 order is reversed and the January 10, 2024 order is reinstated. The matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M. C. Hasley*

Clerk of the Appellate Division